### JEFFERSON COUNTY.

OCTOBER AND NOVEMBER TERM, 1882, No. 37.          OCTOBER 2, 1882.

## Evans *et al. v.* Owens.

1. An offer to prove agency by evidence that the alleged agent in a suit between third parties swore that he was such agent without giving the language of the declarations or describing the kind of agency to which he had testified is clearly inadmissable.

2. The authority of an agent cannot be established by proof of the declarations of the agent.

3. In a suit to recover for goods furnished upon the order of an alleged agent, a letter from the principal to the vendor saying : " Have written Mr. W. (the alleged agent) that I would send check for $130 54, amount of account, less the credits, if you would give a receipt in full, and would hold payment on property until I heard from him, so that I could send it all in one draft, if you accepted," was properly admitted in evidence.

4. In a suit against A, books were produced containing an account in the name of B, and evidence was given to show that as to some of the items of charge B was the agent of A, and that they were furnished upon the credit of A. The plaintiff testified that the books were his books of original entry, but there was no preliminary examination as to who made the entries, or when the items were entered, or when the goods were delivered with reference to the dates of the charges. *Held :* That the books were improperly admitted in evidence.

5. It is very questionable whether the items claimed against A could have been given in evidence, except after distinct proof as to each of those items, accompanied with proof that they had been ordered by A or his authorized agent.

Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ.

[Evans *et al. v.* Owens.]

Error to the Court of Common Pleas of *Jefferson County.*

*Assumpsit* by C. D. Evans and J. B. Evans, trading as C. D. Evans & Bros., against Reese Owens to recover for goods alleged to have been sold and delivered.

Upon the trial in the court below, the plaintiff called *David E. Stanford*, who testified *inter alia* in substance: I believe I am acquainted with W. D. Williams. I am acquainted to some extent with the operation of Reese Owens. I recognized W. D. Williams in 1879 as Owens' agent there. I was subject to him in shipping some lumber of Owens. The first time that I saw Williams he was introduced to me as in the place of R. B. Little. Little introduced me to him, and said any business I had to do with him or Owens, to apply to Mr. Williams. I was subject to his order in handling the balance of that lumber. I got some orders from Little directly to ship some of that lumber. As to in what capacity he was acting, I know nothing more than I supposed him to be the agent of Owens.

*Squire Marlin*, for the plaintiff, testified *inter alia*: It is three, four, or five years since I was first attorney for Mr. Owens. He does business in Pittsburgh. Mr. Owens had some lumber in this county that John A. Crawford was manufacturing for him. I am acquainted with Mr. Little. I think Mr. Little was a clerk or agent for Mr. Owens. I believe he is a clerk yet for Mr. Owens. My understanding was that Williams was up here to superintend some other business and also acting as agent for John Crawford. He was to see that Reese Owens got his boards.

*David E. Stanford* recalled for cross-examination: I had no information from Reese Owens by which I recognized Williams in any capacity whatever. From Mr. Little I had. I was getting my pay for that work through Mr. Owens, and Mr. Little had paid me some time previous to this, and he tells me now when he introduced me to Williams, "Now," he said, "anything you have to do with us, do with Williams, for I have so many other things to attend to I cannot be here." After that I went to Williams for all I wanted with one exception. I went there and got groceries, flour, postage stamps, and stationery. I got them from Mr. Evans. I went to Williams and spoke to him about the flour. He said to me to go Charles there, and he would see to that.

*William T. Cox*, for the plaintiff, testified in substance, *inter alia*: I am acquainted with Reese Owens. He told

[Evans *et al. v.* Owens.]

me in Pittsburgh that he was going to send this man Williams up here to see about his things, his business here. I had a settlement with Williams. Little told me that them articles had been sent up to Rockdale to Williams, and he told me to go up there and make a settlement with Williams, and send the account back to Pittsburgh and they would send me a check for my money. I went to Rockdale and settled with Williams, and he sent the account to Pittsburgh and sent me a check.

*Esquire Patton*, for the plaintiff, testified in substance, *inter alia*: There was a case before me in which W. D. Williams appeared. The name of the case was Elenor Harvey against John A. Crawford. Mr. Williams appeared before me in that case for Mr. Owens. He said he was there for the interest of Mr. Owens. I am a justice of the peace for that township. I have not the exact date that case was tried, but it was in the fall of 1879.

*Q.* "Did he do anything more than say he was agent of Reese Owens? Did he swear to it before you?

*A.* Yes. He swore to it."

Objected to by counsel for the defendant, and the objection was overruled and an exception granted.

*C. D. Evans*, one of the plaintiffs, testified, in substance, *inter alia:* W. D. Williams was acting for Reese Owens in our neighborhood there in that lumbering job. Milligan and John A. Crawford had been acting for him before Williams came there. I heard Williams say he was doing business for Reese Owens. He was doing a general business, and I believe ordered cars to ship lumber. He gave me verbal orders for goods. These goods are charged in our books to John A. Crawford. Williams told me shortly after he came to Rockdale. I had a little account on my books then against Crawford, and I told him I did not want to furnish Crawford any more, and he said the account of John A. Crawford was right, and any account I would make with Crawford would be right. He said that as the agent of Reese Owens. After that time, these goods were all furnished to John A. Crawford I furnished men that were working on the hill with goods, and men that hauled lumber to the railroad, and all parties, under the direction of W. D. Williams. Little at one time looked over the account I have here and he admitted, I believe, something over $200 of the account to be all right. as against Owens. Williams looked over it a time or two before, and he made a part of the account to Crawford and part to Owens. I wrote to Owens and got a letter in reply, signed by Reese Owens

[Evans *et al. v.* Owens.]

& Co. I did not make a proposition and never had no settlement.

Counsel for plaintiff offered in evidence the following letter:

" OFFICE OF REESE OWENS & CO.,
PITTSBURGH, PA., *January 21, 1880.*

Mr. C. D. EVANS, Rockdale Mills, Pa.:

DEAR SIR: Your favor of the 19th at hand and noted. I cannot see why, when I furnished the goods, I should not get credit with them. Have written Mr. Williams that I would send check for $130 54, amount of account, less the credits, if you would give a receipt in full, and would hold payment on property until I heard from him, so that I could send it all in one draft, if you accepted.

Truly yours,
REESE OWENS & CO."

It was admitted that the letter offered was in the handwriting of Little.

Counsel for defendant objected to the offer, because it was a matter of Reese Owens & Co., and contained some kind of a proposition which was not accepted.

The offer was admitted under exception.

The witness, upon cross-examination, said: The account in the ledger reads: J. A. Crawford and Reese Owens. When I made out that ledger off the book of original entries, it read, first, J. A. Crawford. There was a part of this same account J. A. Crawford before Williams came there at all. It is all carried into this one account. After that account stood charged to Crawford, I wrote the Reese Owens at the heading. I cut off the tops of some accounts. I think that I did have it made out against Crawford, assumed by the agent of Reese Owens; something of that kind; I don't remember. I did not cut the heading off and stick another on after it was sworn to. Crawford gave me a note, a judgment note, and judgment embracing this account. I entered up that note as a judgment against Crawford and issued execution on it.

Upon reëxamination-in-chief, the witness said: Those are my books of original entry.

Counsel for plaintiff offered to prove "an account having been on the books charged to John A. Crawford, the evidence having shown they were directed to so charge it by the agents of Reese Owens, for the purpose of charging Reese Owens, and this, in connection with the testimony of Mr. Evans, who heretofore testified to it, stating that he gave credit to Reese Owens and not to Crawford."

[Evans *et al. v.* Owens.]

Counsel for defendant objected to offering in evidence "any account charged to John A. Crawford, as this suit is against Reese Owens, the witness having already stated that he has taken a judgment note from John A. Crawford for that same account, that he has entered that note up, and has attempted to collect it by issuing an execution thereon."

He further objected to the offer "of that account on the grounds that it is legally a forgery, having been altered for the purpose of charging Reese Owens and prejudicing his interest."

The Court. We will admit the books and the items thereon charged, for the reason that the witness testifies that the charges were made against John A. Crawford, but the goods were delivered on the credit of Reese Owens. We regard the form of the transaction as quite unimportant. The question for the jury to determine is: First, whether the credit was given to Owens, and second, whether Evans was authorized, by any one having sufficient authority, to give the goods on Owens' credit.

Exception by defendant's counsel.

The witness further testified that the whole amount of the goods sold under the arrangement spoken of with Williams was about $500, and that Little admitted about $240.

There was further evidence as to declarations of agency by Williams.

Counsel for defendant produced evidence by the defendant, Williams and Little, to show that prior to February, 1880, there was no one in Jefferson County authorized to contract debts in his name.

The Court charged the jury as follows:

"The plaintiff claims to recover from the defendant the sum of $457 90. He alleges that he sold goods by the authority of the defendant to a certain John A. Crawford. The defendant recites the claim, and alleges that he gave no authority to any person to contract debts in his name. Did the defendant authorize any person to obtain from the plaintiff goods upon his credit? Is there anything in the evidence from which such authority can fairly be inferred? If such authority can fairly be inferred from the evidence, to what extent was the agent authorized to contract debts for and on account of the defendant.

The plaintiff alleges that this authority can fairly be inferred from the evidence. He says that he has shown by a certain Mr. Cox that the defendant told him that Williams was coming up to superintend his business.

*[Evans et al. v. Owens.]*

The plaintiff further says that he has shown by the oath of Mr. Owens (I think in a case in equity) that he admitted that Williams was his agent. [He alleges that he is in possession of a letter signed by Owens in reply to one claiming this bill, and he says that in that letter Owens offers to pay $130 of this bill.] He says that he has proved through transactions, in which Williams was the actor, that Owens ratified the acts; he also says that he has shown by the testimony of McCollough that Owens told him that Williams was authorized to act for him, and that McCollough was not to give any goods unless Williams or Evans ordered them.

He says from these and other circumstances that the jury are fairly authorized by the evidence to believe and find that an authority was given by the defendant to Williams to contract debts for him with Evans, and that under the evidence they have shown that Evans would fairly be authorized to believe that Williams had authority to contract debts in the name of Owens. Gentlemen, we leave the evidence as to this with you, instructing you that you must first find the authority; to bind Owens, the authority must come from him.

Did Owens authorize Williams or any one to run a bill in his name at the plaintiff's store, and if he did authorize Williams or any one to run a bill for him at the plaintiff's store, to what extent did he authorize them to run that bill, and on what account? You must find that from the evidence.

The defendant, on his side, alleges that he gave no such authority. He says himself, under oath, that he gave no authority to contract debts on his account. Mr. Little, his clerk, says he gave no authority to him to contract debts on his account, and Mr. Williams says he gave no authority to him to contract debts on his account. Mr. Little says that in looking over the accounts with Evans, there were $208 that was made up of items furnished to persons who were working for Crawford in the interest of Owens. He says that he promised to pay that much, but that the balance of the claim he did not promise to pay. He says that even this promise he was not authorized to make by Owens.

It would seem, then, from that testimony that there was a part of the goods that were furnished John A. Crawford for his own benefit, and part of the goods were furnished for the benefit of the men who were working for the advantage of Owens, and that this clerk held the men who had got goods who were working for Owens'

benefit, ought to be paid by Owens, and the other furnished to Crawford ought not to be furnished at all. You have heard his statement, and you heard Evans' statement; it is bearing upon this branch of the case. What amount did the defendant authorize persons to buy on his credit? It bears on that question. Under all the evidence, gentlemen, can you fairly infer that Owens authorized this indebtedness to be contracted on his account with the plaintiff? If you find that he never authorized it, then your verdict will be for the defendant; but if he authorized debts to be contracted with the plaintiff, then you will inquire, under the evidence, how much does the evidence fairly show that he authorized to be contracted. These questions are for you. Under the evidence, we leave the case with you. Be careful, on your part, not to be influenced by any prejudice, either for or against either of these men; they are entitled to have a completely fair trial under the evidence, and there should not be any passion in the case at all.

Now, take all the evidence on part of the plaintiff, and consider it; then take all the evidence on part of the defendant, and consider it; and from the whole evidence, has the plaintiff fairly shown any authority to contract a debt with the plaintiff in the name of the defendant, and if so, then what does the evidence fairly show—that the person contracting the debt had right to contract it?

Remember that this debt is charged in the name of Crawford. The plaintiff says that he was authorized to keep it in that name; the defendant says not. [The defendant says that the fact that the note of Crawford was given for the money is strong evidence that the credit was given to Crawford; the plaintiff says not,] that Williams told him to furnish the goods; and he says he has shown Williams was authorized by the defendant to so direct him. We leave the case with you. [If you find for the plaintiff, state how much;] if you find for the defendant, find for the defendant generally."

Defendant's counsel excepted to those portions of the charge inclosed between brackets.

December 15, 1881. Verdict for plaintiff, $410. A motion for a new trial was refused, provided the plaintiff should release so much of the verdict as exceeded $300, which was done, and judgment entered.

Defendant took out a writ of error, and assigned that the Court erred:

*First.* In admitting evidence of the acts and declara-

[Evans *et al.* *v.* Owens.]

tions of W. D. Williams to establish the fact that he was an agent of Reese Owens.

*Second.* In admitting without qualification the letter of Reese Owens & Co. to C. D. Evans.

*Third.* In admitting without qualification the books of C. D. Evans & Bro. as to an account Evans swears he charged to J. A. Crawford, and for which he took his note.

*Fourth, Fifth,* and *Sixth.* In those portions of the charge within brackets.

*Stewart & Marlin* for plaintiff in error.

Agency cannot be proved by the declarations of the agent. The agent's authority must be clearly proved : Moore *v.* Patterson, 4 Casey, 505 ; Grim *v.* Bonnell, 28 P. F. Sm., 152 ; R. R. *v.* Johnson, 7 W. & S., 317 ; Shelhamer *v.* Thomas, 7 S. & R., 106.

An offer in writing by one of the parties, not acceded to by the other, cannot be read in evidence : Tryon *v.* Miller, 1 Wh., 11 ; Slocum *v.* Perkins, 3 S. & R., 295 ; 1 Greenl. on Ev., sec. 192.

Under the Statute of Frauds, plaintiff could not charge Reese Owens by his book-account in Crawford's name : R. R. *v.* Johnson, 7 W. & S., 317 ; Seltzer *v.* Coleman, 8 Casey, 493.

*Gordon & Corbit* for defendant in error.

The fact of agency was proved.

The letter offered was an acknowledgment or evidence of liability, and not written for the purpose of compromise.

OCTOBER 25, 1882.—The opinion of the Court was delivered by GREEN, J.:

This was an action against Reese Owens for goods which were, in point of fact, sold, delivered, and charged on the plaintiff's book of original entries, to John A. Crawford. It was alleged that Owens was liable for the debt because they were sold to Crawford on the verbal authority of one W. D. Williams, acting as the agent for Owens.

On the trial, the plaintiffs, as one of the means of establishing the agency, called a justice of the peace before whom a suit, by one Harvey against Crawford, was tried, to prove that on that trial W. D. Williams had testified that he was agent for Owens. This was objected to, and admitted under exception, and the first error assigned is to the admission of this testimony. The whole of the testimony offered and admitted under this excep-

tion is comprised in a single question and answer, to wit:

*Q.* Did he do anything more than say he was agent of Reese Owens? Did he swear to it before you?

*A.* Yes, he swore to it.

There was clear error in admitting this testimony. The witness did not pretend to give the language of the person to whose declarations he was testifying. He did not decribe the kind of agency to which Williams had testified, and hence it is impossible to tell whether the agency, whatever it was, authorized Williams to order goods to be sold on the credit of Owens. This alone is quite enough to condemn the evidence, but, apart from that, the mode of proof was not legitimate.

It is a perfectly familiar rule that the authority of an agent cannot be established by proof of the declarations of the agent: Clark *v.* Baker, 2 Whart., 340; Chambers *v.* Davis, 3 Whart., 44; Jordan *v.* Stewart, 11 Har., 244; Grim *v.* Bonnell, 28 P. F. S., 152.

As most of the proof offered consisted of the mere statement or declaration of Williams that he was agent for Owens, the fact that the declaration was made under oath, as a witness in a cause, is entirely immaterial. Owens was not a party to the cause, nor was he present at the trial.

The first assignment of error is sustained.

We do not think the second assignment can be sustained.

The letter in question was not an offer of compromise. It was a letter written by the defendant to one of the plaintiffs, in which he relates that he had written to Mr. Williams, stating that he would send a check for $130 54, if he [Evans] would give a receipt in full, and would hold payment on property until he heard from him, "so that I could send all in one draft if you accepted." That is all. There is no offer in this letter. It is a mere description of the contents of another letter. It contains some evidence of the agency of Williams, and we think it was therefore admissible.

We think the evidence submitted under the third assignment was not competent. The witness, C. D. Evans, being on the stand, testified, in answer to a question, that certain books were his books of original entries. No preliminary examination was made as to who made the entries, or when the items were entered, or when the goods were delivered, with reference to the dates of the

charges, and the account itself was against Crawford and not against Owens.

In this condition of the testimony, the books were admitted in a lump, and also all the items thereon charged against Crawford. Of course, in such circumstances, the book entries were not admissible. It is true that afterwards the Court did interrogate the witness as to the manner and time of making the entries, and proper answers were given, which, as against Crawford, in an action against him, might have constituted sufficient *prima facie* proof to warrant their admission. But the cross-examination had also developed that the account contained items against Crawford which were not claimed against Owens. Nevertheless, and without any selection and proof of the items claimed as against him, the account was admitted as an entirety.

There is much confusion in the testimony, and the account itself is not printed. We do not discover anywhere in the testimony a distinct presentation of the particular items which, it is alleged, were ordered by Williams. There is some testimony that the whole amounted to about $500, but, of course, that would not make the entire account admissible.

We think it very clear that in no aspect of the testimony was the account competent as a book-account of original entries in the present action against Owens.

It is not charged to him at all, and it is very questionable whether the individual items claimed against Owens could have been given in evidence, except after distinct proof as to each of those items, accompanied with proof that they had been ordered by Owens or his authorized agent. We cannot find any such itemized proof in the testimony. As an entirety, the account certainly was not admissible.

We do not think there is any merit in the remaining assignments and they are not sustained.

Judgment reversed and *venire facias de novo* awarded.