## Evans *v.* Evans, Appellant.

[Marked to be reported.]

*Married Women—Evidence of husband as to wife's title.*

On an issue to determine the owership of personal property claimed by a married woman, both husband and wife are competent to testify in support of the wife's title.

*Interpleader—Husband and wife—Review—Immaterial error.*

On an interpleader to determine the title of a married woman to goods taken in execution as the property of her husband, the Supreme Court will not reverse a judgment for the wife because the court inadvertently stated to the jury that the issue was to determine whether the property belonged to the wife or to the plaintiff in the execution.

*Married Women—Right to borrow money—Promissory note.*

A married woman has the right to borrow money on a promissory note with which to buy a horse.

*Evidence—Rejection of evidence.*

If an offer of evidence is objectionable in part, it is not error to reject it as a whole.

On an issue to determine a wife's title to personal property, a witness was asked whether either the husband or wife had stated to him that the property belonged to the husband. Objection was made to the question without reasons being given, and the objection was sustained. *Held* that, as the declarations of the husband against his wife's interest were inadmissible, there was no error in overruling the offer as a whole.

Argued May 16, 1893.  Appeal, No. 288, Jan. T., 1893, by defendant, Walter G. Evans, from judgment of C. P. Lancaster Co., May T., 1890, No. 15, on verdict for plaintiffs, Emma C. Evans, and James Evans, guardian ad litem of Gertrude Evans et al.  Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL and DEAN, JJ.

Sheriff's interpleader to determine ownership of personal property.

At the trial, before PATTERSON, J., it appeared that Walter G. Evans, the defendant, issued an execution on a judgment against James Evans and levied upon a horse, buggy, harness and other farm and household goods, which were claimed by Emma C. Evans, wife of James Evans, and also upon an organ which was claimed by Gertrude Evans, daughter of James Evans.  James Evans was offered as a witness for plaintiff.  Objected to.  Objection overruled and exception [1, 2].

Emma C. Evans was offered as a witness.  Objected to, as she was a party to the suit, and wife of the defendant in the execution.  Objection overruled and exception [3].

Benjamin Jones, defendant's witness, was asked : " Q. State whether or not either of them, James Evans or his wife, told you since this execution was issued, that this was James Evans' horse, and since this alleged sale of the horse to Benjamin Charles ? "  Objected to by plaintiff.  Objection sustained and exception [6].

The court, after reciting the execution and issue framed, charged in part as follows :

" [So that, you will perceive that this issue, which you are trying now is an issue to decide to whom this personal property belongs, whether it belongs to Mrs. Emma C. Evans as she claims, or whether it belongs to Walter G. Evans, and on the other side, whether part of it belongs to Gertrude Evans, the daughter, or whether it belongs to Walter G. Evans.  That is the issue.] [4]. . . .

" Now the first article which they inquire about is the organ, Emma says it was Gertrude's.  Gertrude swears it was hers. It is in evidence, and not disputed that this organ was bought by Walter G. Evans, the defendant here, and was paid for by him.  It was his property.  It is alleged on the other side that

Walter, that is, the defendant here, gave that organ to his niece, Gertrude. That question you are to decide. Did he do so? Does the evidence satisfy you that he did it? Now the evidence is that that organ was delivered at the house where Emma C. Evans and her husband lived, and where Walter Evans then lived or boarded. He said, 'I give you, Gertie, this organ, and you may make a living out of it some time. I want you to learn on it.' And it was accordingly given to her in the house where she lived, and where her father lived and where Walter lived. If it had been given to her in any other house, if the organ had not been there in the house, then it would not have been a gift until he brought the organ and delivered it; because, where a gift is given inter vivos, that is during the life of the person, or whether it is given causa mortis, by reason of the death of the person, there must be a delivery; we say, that the organ being in the house where Gertie was and where Walter was, and if she had it and accepted it and used it, it was a delivery; and there couldn't be a better delivery it being already in the house. . . . The delivery must follow the gift. You must be satisfied of that before you can give this organ to Gertie. That is all the law I need mention in regard to personal goods or chattels. It may be that it was Walter's, and if so, he could give it to you or to me, or whom he pleased. [And it is admitted that he took it to James'; and if he said what they testified, that he now gave her this organ, and he would give her five dollars to buy a book, and to learn to play on it so she might make a living, then I say it became a gift, and it was hers. It was Walter's when he bought it. It don't take the property from him unless the jury find that he gave it to Gertie. Who swears that he thus gave it to Gertie? Gertie herself and her mother, Emma C. Evans, and the father. And they called other witnesses, O. F. Groff and Charles McFalls, strangers to the family, who testified that they heard Walter say that he gave an organ to Gertie, and that he gave her five dollars at the same time. I am reciting this testimony, because you must be convinced in your own mind that this gift was made, and that it was given willingly, and after it was accepted, Walter had no property in it. Mr. Groff said he heard that several times. He said 'he told it in my barroom about three years ago.' Then Charles McFalls was called. He said : ' I

know Walter G. Evans, and I know Gertie Evans. Walter told me he might as well have bought that for her, Gertie, as to send her to school, or spend my money in any other way.' I recite that testimony that you may consider it in connection with Gertie's and her mother's and her father's] [7]

" [Now, what about the horse. We will come to the horse, a dark brown horse. Mrs. Emma Evans, the mother, testified it was hers. You will please recollect all the transactions about that horse. She says she bought it from Mr. Charles for one hundred and seventy-five dollars. When she went to buy it Scott Evans went with her. 'I paid for it,' she said. She was asked where she got the money. She said she borrowed it from Mr. Milton Eby, and then Milton Eby corroborated her and says she did get money. She had bargained for this horse. Mr. Eby said he had given her a hundred dollars, and that was paid back, and he had loaned her the money. Now, you will consider whether that was hers or not, by reason of borrowing that money. I suppose if a wife has any credit, and comes to you or me, and buys a horse for a hundred or a hundred and seventy-five dollars, and we take her note without any bail or anything else, it is a good, fair transaction.] ' [5].

Verdict and judgment for plaintiffs. Defendant appealed.

*Errors assigned* were (1–3, 6) rulings on evidence; (4, 5, 7) instructions; quoting instructions and bills of exception.

*Benjamin F. Davis,* for appellant.—James Evans was an incompetent witness: Kisterbock v. Lanning, 19 W. N. 54; Fidelity Ins. Co. v. Building Assn., 11 W. N. 205; McDebitt v. Vial, 11 Atl. R. 645; Pier v. Siegel, 107 Pa. 502; Martin v. Rutt, 127 Pa. 380; Greenleaf, Ev., § 335; Sahms v. Brown, 44 Leg. Int. 512; Pleasanton v. Nutt, 115 Pa. 266; Boyle v. Haughey, 10 Phila. 98.

The fact that defendant below was plaintiff in the execution would indicate he had not title to the goods. If the title was in him then replevin would be his remedy: 1 T. & H. Pr. 1142: Tremont Coal Co. v. Manly, 60 Pa. 384.

Mrs. Evans bought the horse on credit if her own statement is to be accepted as truthful. If that is so then the verdict as to the horse should have been against her and in favor of defend-

ant, and that portion of the charge is clearly error : Robinson & Co. v. Wallace, 39 Pa. 129 ; Hallowell v. Horter, 35 Pa. 375 : Heugh v. Jones, 32 Pa. 432; Leinback v. Templin, 105 Pa. 522 ; Sober v. Standart, 130 Pa. 47 ; Vowinkle v. Johnson, 10 Cent. R. 385 ; Seeds v. Kahler, 76 Pa. 262; Evans v. Scott, 89 Pa. 136 ; Covanhovan v. Hart, 21 Pa. 495 : Renninger v. Spatz, 128 Pa. 524.

It was error to recapitulate the evidence of plaintiffs and their witnesses, and make no allusion whatever to the testimony of appellant : R. R. v. Berry, 68 Pa. 272.

*A. J. Eberly,* for appellee.—Cases decided before the passage of the act of May 23, 1887, P. L. 158, relating to the competency of witnesses, are no authority now : Bitner v. Boone, 128 Pa. 570.

As to the sixth assignment of error, it seems that not much stress is laid on it. The question was properly disallowed, as it was intended to prove a declaration of the husband against his wife which the law does not permit : Act of May 23, 1887, P. L. 159 ; Martin v. Rutt, 127 Pa. 380.

OPINION BY MR. JUSTICE GREEN, May 25, 1893 :

The difficulty with the first three assignments of error is that both the husband James Evans, and the wife, Emma C. Evans, were offered as witnesses by the wife, in support of her title, and for that purpose both of them were entirely competent, especially since the passage of the act of 1887. The husband was not a claimant of the title at all. On the contrary he testified to facts which tended to establish his wife's title, and he was certainly competent to testify in her favor. Of course the wife was competent to testify in support of her own title. The disqualification which was held to exclude her in Pleasanton v. Nutt, 115 Pa. 266, does not exist in this case.

We discover no error in the fourth assignment. It is technically true that the defendant in this issue was not claiming title in all the goods in himself. He did claim the organ on the ground that he never gave it to Gertrude, but the other goods he did not claim as his own. But Mrs. Evans the plaintiff did claim them as hers, and the issue was made up in the usual way of a wager upon her title, in which she asserted that

the right of property in the goods was in her, and the defendant denied that allegation. The real controversy therefore was upon the validity of her title. The inadvertent statement of the court as to the question being whether a part of the goods belonged to Mrs. Evans or whether they belonged to Walter G. Evans was entirely immaterial. The fourth assignment is discussed by the appellant on the general merits of the question of fact as to whether the wife owned the goods. That question is not raised by the assignment, and if it were, we could not consider it, as it was a pure question of fact upon which there was ample testimony in support of the wife's title, and the jury found in her favor. The theory that because she borrowed the money with which to pay for the horse, it was a purchase upon credit and therefore the horse belonged to the husband, has no force, first, because the wife paid her own money for the horse, and, second, she did not get the money from her husband but borrowed it from a third person, who was examined as a witness and testified that he lent it to her. The validity of her note to that person has no place in this contest, but if it had, under the new married persons property act of 1887 we have affirmed the validity of the judgment of a married woman for borrowed money, and could not well deny the validity of her promissory note given for the same purpose. The decisions upon this subject prior to the act of 1887 are not applicable now.

The fifth assignment is not pressed and has no merit.

The sixth assignment at first blush seems well taken. It would be error to reject proof of declarations of the wife against her own interest. But the question was not put in that way. It was: " Q. State whether or not either of them, James Evans or his wife, told you since this execution was issued, that this was James Evans's horse and since this alleged sale of the horse to Benjamin Charles?" The record of the exception is thus: " Objected to by plaintiffs' counsel. Objection sustained. Question disallowed. Bill of exceptions signed, sealed and filed for defendant." We are not informed what the objection was and if the question was improper for any reason it was not error to reject it as a whole: Sennett v. Johnson, 9 Pa. 335; Wharton v. Douglass, 76 Pa. 273. Now any declarations made by the husband against the wife's interest were for that reason inadmissible: Martin v. Rutt, 127 Pa. 380. Therefore it would

have been error to admit such declarations and the court was right in rejecting the offer as it was made as a whole. Immediately after the rejection of the offer the witness was asked if he had ever heard James Evans say, in the presence of his wife, after the sale to Charles, that it was his horse. This was objected to and admitted. The witness then did testify to such a declaration, but upon cross-examination, said the wife was not present and thereupon, on application of the plaintiff's counsel, the answer of the witness was stricken out. This action of the court below was correct. If then the defendant wished to offer any declarations of the wife against her interest he should have done so, but he did not, and the question of the admission of such declarations did not come before the court at all and they cannot be convicted of error in that respect. It is fair to infer that had such an offer been made it would have been admitted, because the court did admit a declaration of the husband which was alleged to have been made in the presence of the wife simply because of that allegation. It was probably error to do so because of the incompetency of the husband to testify, or make any declaration against his wife's interest, but that was error in favor of the defendant. But, however that may be, there was no distinct offer to prove declarations made by the wife against her own interest, and hence no such declarations were rejected and there was no error on that subject.

We do not think the charge is amenable to the criticism contained in the seventh assignment. The court said in a previous part of the charge : " It is in evidence and not disputed, that this organ was bought by Walter G. Evans, the defendant here, and was paid for by him. It was his property. It is alleged, on the other side, that Walter, that is, the defendant here, gave that organ to his niece Gertrude. That question you are to decide. Did he do so? Does the evidence satisfy you that he did it? " etc.

The whole of the charge must be taken together when a charge of inadequacy or unfairness is made against it, and we think, considered in that way, it was a fair presentment of both sides. We see no error in the record.

Judgment affirmed.