Benjamin F. Mundis, Appellant, *v.* H. W. Emig and Clayton Emig, doing Business under the Firm and Name of H. W. Emig & Bro., and J. G. Ludwig.

*Practice, C. P.—Trial—Evidence—Offer of evidence defective in part.*

While the general rule is that when an offer is made as a whole of evidence partly admissible and partly not, the judge may reject it all, and is not bound to separate the good from the bad, yet he may do so, and it seems that where an offer is clearly competent in substance and the objection is to a small or unimportant part, it may be the duty of a judge to point out, or at least call upon the party objecting to specify, the parts objected to.

*Principal and agent—Power to contract—Power to hire laborers—Partnership.*

A general authority as manager of a partnership to procure contracts to dig artesian wells, does not imply any authority to do the work or to engage workmen for that purpose.

Argued May 23, 1895. Appeal, No. 441, Jan. T., 1895, by plaintiff, from judgment of C. P. York Co., Jan. T., 1892, No. 67, on verdict for defendants. Before STERRETT, C. J., WILLIAMS, MITCHELL, DEAN and FELL, JJ. Affirmed.

Assumpsit for wages.    Before LATIMER, J.

At the trial plaintiff proposed to prove by the witness on the stand that in 1889, in February, he was seeking employment as a laborer,—as a workman; that he saw the advertisement in the York Daily, a newspaper published in the county of York, of a firm that were engaged in the business of digging artesian wells; advertising under the then firm name of A. G. Emig & Bro.; that he went to find out who these parties were, and seek an engagement to work for them; (witness called from the witness stand to table of counsel for plaintiff;) and also to prove that they had as manager J. G. Ludwig; and that he went to him to seek an engagement, and did enter into a contract with him to work for that firm; that H. W. Emig was one of the members of that firm;—was in fact the other member of the firm at that time;—that he engaged with that firm to work at the price of $10.00 per month, and his wages to be increased as he became proficient in the work; and that he continued to work for a period of seven or eight months; and that during the time of his employment with this firm the firm was changed from A. G. Emig & Bro. to H. W. Emig & Bro., the present firm, W. H. Emig still continuing as a member of the last firm; that he sought to obtain definite information from Mr. Ludwig, the manager, as to what his pay really was to be, and did not learn definitely until seven or eight months after he had been working for the firm, when it was agreed that he was to have two hundred dollars for the first year, if he staid the year out; that he did work during that year, and that during the early part of that year the firm changed to the name in which the suit is brought, H. W. Emig & Bro., and that he did continue to work the full year until April 1st, 1890; that then he entered into a contract with the firm through their manager, Mr. Ludwig, to continue on working for the firm at twenty dollars per month, and that he continued to work under that until about the 10th or 11th day of June, 1890; that he received payments of all that was due him for all the work performed from the time he began to work until he ceased to work for them,—all the wages that was due him except a balance of $83.93; that one payment that he received from the manager, Mr. Ludwig, was an order on Clayton Emig for ten dollars · and that Clayton Emig promised him time and again to pay this balance that was due him from the firm.

To be followed by proof of the fact that H. W. Emig and Clayton Emig paid the boarding of the hands, the plaintiff included, at the Central Hotel in York, while they were engaged in this work; and other proof in support of the plaintiff's allegation, per statement. And to be followed by other proof that H. W. Emig & Bro. contracted with other persons for the digging of wells, signing contracts, or having the contracts signed, with their names,—with the firm name,—and that J. G. Ludwig, manager, made these contracts, with their name signed to the contract, and J. G. Ludwig as manager; and that J. G. Ludwig collected the moneys earned at the wells they were digging while the plaintiff was working for said parties; to be followed by proof of the advertisement in the York Daily.

The offer as a whole was objected to, as not proper legal evidence for the purpose of sustaining the issue in this case, or for any other legal purpose; as being irrelevant in a large part of it, and immaterial and indefinite; as being an apparent offer to show a partnership in an improper and illegal manner; and as being no proper legal evidence, to establish, or tend to establish, either the alleged partnership of Clayton Emig and H. W. Emig, nor the agency of Ludwig for that partnership, nor any liability of the defendants, or either of them, to the plaintiff.

The offer was overruled, exception to the plaintiff, and bill sealed by order of court. [6]

Plaintiff then offered in evidence the following paper:

"Memorandum of Agreement, made this 18th day of Feb., A. D. 1890, between J. G. Ludwig, Mg'r, of York, county of York, and state of Pennsylvania, of the first part, and Philip Kissinger, of Freystown, county of York, and state of Pennsylvania, a party of the second part, witnesseth: The party of the first part agrees to sink a well in earth or rock to the depth of ten or more feet for the party of the second part on his premises, at Freystown, in the county of York, state of Pennsylvania, at the following prices:

For each foot of Earth drilled and cased
"      "      "    Slate Rock drilled
For each foot of Limestone Rock drilled      $3.00
"      "      "    Flint Rock      "
For each foot of Sandstone Rock drilled

"Said second party is to have trial of well for one season and if satisfactory is to pay or give note for said work.

" Witness our hands and seals this 18th day of February, 1890.

| | |
|---|---|
| " H. W. EMIG & BRO., | [L. s.] |
| " J. G. LUDWIG, Manager, | [L. s.] |
| " PHILIP KISSINGER, | [L. s.] " |

To be followed by proof that the plaintiff worked for H. W. Emig & Bro. at the digging of said well, and that H. W. Emig & Bro., by H. W. Emig, one of the members, received the pay from the witness for digging said well.

To be followed also by proof by the plaintiff himself of the work done, and the amount remaining due to him.

For the purpose of establishing the agency or management of J. G. Ludwig for H. W. Emig & Bro. in the management of this business, and to establish the liability on the part of the defendants to the plaintiff for this work done, and the services rendered.

Defendants objected to it as not proper legal evidence for the purposes offered, or any of them, or for any other purpose in the case ; that it does not show, nor tend to show, any authority in J. G. Ludwig to bind the defendants for the pay of the plaintiff; that there is no offer to prove either the partnership of the defendants, nor by any legal proof the agency of J. G. Ludwig.

The Court : I understand this affects the work done on that particular well.   Does it?

Mr. McClune, counsel for plaintiff : I am simply offering the paper now.   I will simply offer to prove, if the paper is admitted, to establish the agency of Ludwig for H. W. Emig & Bro. The copartnership of H. W. Emig and Clayton not being denied is admitted by the record.

The Court : It seems to me that the material question involved in this offer is the nature and character and extent of the authority of the proposed agent.   There is nothing in the offer that proposes to show that.   I will overrule the offer, and seal a bill of exceptions for the plaintiff. [1]

Plaintiff offered to renew the offer to prove the execution of this contract for the purpose of establishing the agency of J. G. Ludwig, and for the purpose of showing by the contents of the contract itself that the powers of the agent were such as the employment of laborers and workmen to do the work, that that is an inference fairly to be inferred from the contract.

The Court: That offer I have already ruled upon. I will overrule the offer and seal a bill of exception for the plaintiff. [2]

Plaintiff then offered the agreement in evidence again for the purpose of showing that this contract was entered into by J. G. Ludwig as manager for H. W. Emig & Bro., who were engaged in the business of artesian well digging, for the purpose of sustaining the issue on the part of the plaintiff; to be followed by proof that the plaintiff worked at the digging of this very well, contracted for in this written contract; and to be followed by further proof that H. W. Emig & Bro., through H. W. Emig, received the money from Mr. Kissinger for the digging of this well, to be followed by proof, of course, that the plaintiff worked at the digging of that well, and that there is a balance then due him from these parties of $86.93, for the digging of that well, and others,—it is to be followed by proof of that,—the digging of other wells; and to be followed by other proof showing the connection of H. W. Emig with this business.

The Court: Is that all?

Objected to that the purpose is not sufficiently specific to let us understand what is intended to be sustained by the offer; that the testimony proposed is not proper legal evidence to show the agency of J. G. Ludwig to bind the defendants for the wages of this plaintiff, and irrelevant and immaterial.

The Court: I will have to overrule the offer. [3]

Plaintiff offered to prove by the witness on the stand that that is the check that he gave to H. W. Emig & Bro. for the work done at his artesian well, which work was partly done by the plaintiff in this case.

$467.50.                    York, Pa., June 12, 1890.          | No. 914

One hundred and twenty days after date I promise to pay to the order of H. W. Emig & Bro.,          | $467.50

AT SMYSER, BOTT & CO., BANKERS,          | Oct.

Four hundred and Sixty-seven          50-100 Dollars, without defalcation for value received.          | 10
                    PHILIP KISSINGER.          | 13

Paid—Smyser, Bott & Co., Bankers, York, Pa.

Endorsed—H. W. Emig & Bro.

H. W. Emig.

Mr. Niles: All the objections to the former offers are renewed.

The Court: I will overrule the offer. [4]

Mr. McClune: I desire, your honor, to renew the offer I made this morning in connection with the offers made in connection with the papers marked Nos. 1 and 2; and I desire to recall the plaintiff; also to offer to prove further by the plaintiff that H. W. Emig was present on many occasions taking part in the management of this work. I desire to add that to the offer;—and also to cite the rule of court on page 6, under admissions for the purpose of trial,—the rule in regard to partnerships.

Mr. Niles: All the objections to the original offer are renewed.

The Court: The offer as a whole is very clearly inadmissible. It contains a very large amount of irrelevant matter. I will overrule the offer. [5]

Plaintiff offered to prove by himself that he saw in the York Daily, a newspaper published in the county of York, an advertisement of a firm of the name of A. G. Emig & Bro., J. G. Ludwig, manager, engaged in the business of digging artesian wells; that he went to J. G. Ludwig, and entered into an engagement with him to work for said firm.

To be followed by proof that he did work for said firm; and during the time he so worked for said firm the firm was changed by taking in Clayton Emig, the other member of the firm, mentioned as defendants in this suit. To be followed by other proof establishing the fact of the liability of the defendants. To be followed by the proof of the advertisement in the paper, and that there was a balance due for labor performed of $83.93, or something like that, with interest from the date of the judgment before the justice of the peace.

The offer was objected to as not proper legal evidence for any purpose in this case; as not being legal evidence to establish, or tend to establish, any liability on the part of the defendants, or either of them, to the plaintiff; as being an offer to show the contents of a written instrument by parol, and as being irrelevant and misleading, particularly without an offer to prove any facts showing or tending to show the authority of the J. G. Ludwig mentioned to bind or contract for the defend-

ants; and being an offer to show conclusions, and not facts, as to the partnership and the agency, and the change of partnership. And, further, that the offer is contradictory of the statement, in that it proposes to prove that in 1889 the firm with whom the alleged contract was made was composed of Albert Emig and H. W. Emig, whereas the statement alleges that H. W. Emig and Clayton Emig were engaged in the business of drilling and boring wells on the 1st day of April, 1889, and says nothing about Albert Emig.

The Court: Is Ludwig in attendance?

Mr. McClune: Yes, sir.

The Court: The offer, as made, I shall have to overrule.

Exception to the plaintiff, and bill sealed by order of court. [7]

The court charged as follows:

[Gentlemen of the jury, your duty in this case is very plain to render a verdict in favor of the defendants with costs of suit. The prothonotary will take the verdict in that way.] [8]

Verdict and judgment for defendants. Plaintiff appealed.

*Errors assigned* were (1–7) rulings on evidence, quoting the bill of exceptions; (8) charge of court, quoting it.

*H. H. McClune, George B. Cole* with him, for appellants.— This manager having exercised the power to do the important business of making contracts for the firm for the digging of wells, even signing its name to the same, had the implied power to do the much important business of hiring help to do the work: Harrington v. Bronson, 161 Pa. 296; Chouteaux v. Leech & Co., 18 Pa. 224; Williams v. Getty, 31 Pa. 461; Balt. & Phila. Steamboat Co. v. Brown, 54 Pa. 77; 1 Am. & Eng. Ency. of Law, 350; 17 Am. & Eng. Ency. of Law, 1077.

*Henry C. Niles, W. F. Bay Stewart* and *Geo. E. Neff* with him, for appellee.—This case is ruled by Ludwig v. Gorsuch, 154 Pa. 414.

OPINION BY MR. JUSTICE MITCHELL, October 7, 1895:

This case has had more prolonged consideration than its importance entitled it to, because at the argument we received the impression that some of the offers of evidence by the plain-

tiff were good in substance, and though they contained irrelevant matters, yet the latter might probably be treated as merely introductory and harmless surplusage, and the plaintiff be allowed to put his case before the jury. Undoubtedly the general rule is that where an offer is made as a whole, of evidence partly admissible and partly not, the judge may reject it all, and is not bound to separate the good from the bad: Wharton v. Douglass, 76 Pa. 273 ; Smith v. Arsenal Bank, 104 Pa. 518 ; Evans v. Evans, 155 Pa. 572. But he may always do so, and we are not prepared to say that in some cases where the offer is clearly competent in substance and the objection is to a small or unimportant part, it may not become the duty of a judge to point out, or at least to call upon the party objecting to specify the parts objected to.

Our difficulty in the present case has been caused chiefly by the want of the pleadings and the evidence. Neither have been printed, and we are without guide to the status of the case when the separate offers were made and their relation to each other. It is said in appellee's paper-book that they were not progressive as they appear in the assignments of error, but that the first in time was the one set forth in the sixth assignment. This was a long offer containing undoubtedly a great deal of irrelevant matter, and was specifically objected to on that ground among others. The ruling of the learned judge was that " the offer, *as made*, cannot be admitted." This was a clear intimation to appellant to separate his offer into its component parts, and according to appellee's paper-book he proceeded to do so. But the substance of the offer, which would have made it good, was the recognition of Ludwig's authority to employ plaintiff for the firm, by Clayton Emig's promise to pay the balance of his wages, and by the firm's payment of his board while engaged in the work. Unfortunately none of the subsequent offers presented this evidence free from the objectionable matters with which it was clogged in the first, and most of them omitted it altogether. The agreement made by Ludwig with Kissinger, of itself proved nothing, for he might have been specially deputed to make that contract without any general authority, and as pointed out by the learned judge in his opinion refusing a new trial, even a general authority as manager to procure contracts to dig wells, does not imply any authority to do the work

or to engage workmen for that purpose. All the offers therefore which were based on this Kissinger contract were properly excluded for irrelevancy when they were offered, although if plaintiff had separately offered and got in the evidence above mentioned as to the recognition by the firm of Ludwig's authority to engage him, the Kissinger contract might then have been admissible as corroborative. As the offers were made however we are unable to see that the appellant suffered any injustice at the hands of the learned court below.

Judgment affirmed.