# Bausbach, Appellant, *v.* Reiff.

*Conspiracy—Combination to deprive a person of work—Tres-
pass.*

1. In an action of trespass against twenty-eight men the plaintiff
states a good cause of action, when he charges that the defendants
entered into a conspiracy which culminated in a written demand
signed by them, on the common employer of plaintiff and de-
fendants, which demand amounted to a threat that unless the
plaintiff was discharged, the defendants would embarrass the em-
ployer's business by quitting work in a body.

*Evidence—Rejection of evidence—Matter partly irrelevant.*

2. Where offers of evidence for the plaintiff support a good cause
of action, and the offers are objected to not because any specified
portions are inadmissible, but on the ground that as a whole they
were immaterial and irrelevant, and did not make out a case
for the jury, the court commits reversible error if it rejects the

offers, although they may have contained matter which was irrelevant.

*Appeals—Entry of nonsuit—Assignment of error.*

3. An appeal does not lie from the entry of a compulsory nonsuit, but only from a refusal to take the nonsuit off.

MOSCHZISKER, J., dissents.

· Argued Feb. 14, 1912. Appeal, No. 49, Jan. T., 1912, by plaintiff, from order of C. P. Schuylkill Co., Sept. T., 1910, No. 235, entering compulsory nonsuit in case of George Bausbach v. Frank G. Reiff, et al. Before MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ. Reversed.

Trespass for conspiracy. Before BECHTEL, J.

From the pleadings it appeared that plaintiff was employed as an engineer by the Rettig Brewing Company of Pottsville and that he was discharged because the defendants, twenty-eight in number, joined in a paper addressed to the brewing company requesting his discharge and threatening to stop work in a body if he was not discharged.

When plaintiff was on the stand he was asked this question:

Q. Prior to the time this paper was exhibited to you by Mr. Shugars in which the men said they would not any longer work at the same plant if you were kept on there and employed, did these men do anything whereby they showed feeling against you?

Mr. Snyder: Objected to, prior to the presenting of the paper, because there is no testimony here that prior to that time there was any refusal to work with him. It is incompetent, irrelevant.

The Court: Better have an offer on the record.

Mr. Wilhelm: I propose to prove by Mr. Bausbach that prior to the time these defendants signed the paper in which they said they would refuse to work after twenty-four hours' notice if their employers, the Rettig Brewing Co., would continue George Bausbach in their

employ, there had been trouble between Mr. Bausbach and these men growing out of the fact that the brewing company had found that somebody during the night was rummaging the office, disturbing their papers; that when Mr. Bausbach was inquired of as to what was going wrong, if he knew anything, he did tell the Rettig Brewing Company people that one Tobias was stealing; that because he reported this theft this matter was taken up by these defendants and laid before the union; that the union then fined him ten dollars because he reported these thefts; that he then appealed to the international body as against that fine; that subsequently the union expelled him and he appealed from the expulsion; that the international body in August, 1910, sustained both of his appeals; that while these appeals were pending and he was resisting their efforts to have him put out of the union, they, on July 17th, evidenced their ill-will and this conspiracy against him by signing this paper demanding his discharge. This for the purpose of proving the allegations in the declaration, that they maliciously, wantonly, and oppressively pursued him. This for the purpose of showing that he lost his employment and lost a large sum of money, because he has not been as well employed since, and for a time was out of employment. And for the further purpose of showing malice and oppression, in order that he may have exemplary or punitive damages for the act of conspiracy they committed against him.

Mr. Snyder: Objected to, as immaterial, irrelevant, and incompetent, first, because this conspiracy is based upon the letter or rather the paper which was identified; second, because the malice proposed to be shown by the defendants is being transferred to an incorporated lodge of which these men, together with many other men in the brewery workers' line, are members, and that, therefore, it is not such a personal matter from which malice could be inferred; third, because Mr. Bausbach is not competent to testify to anything that happened in that lodge

for the reason that the lodge is not composed alone of these men, but many other men who are not interested here, and who surely could not have had any feeling, and the court having ruled on it virtually before when the offer was made when Mr. Shugars was upon the stand.

The Court: We sustain the objection for the reasons given, and for the further reason that we do not consider the evidence would be sufficient to base a verdict on in this case, even if proved.

Plaintiff excepts.   Bill sealed. (5)

Q. Do you recall the circumstances that the Rettig Brewing Company men made complaint in the union and asked that Bausbach be fined because he had reported the fact that Tobias had been stealing?·

Mr. Snyder: Objected to, as incompetent, irrelevant, and immaterial, the union having been composed of workers of many breweries.

Mr. Wilhelm: I propose to prove under cross examination, by one of the defendants now on the stand, Frederick Wolfe, that because Bausbach had reported that William Tobias had been stealing, they, the employees of the Rettig Brewing Company people entered charges against him before the union; that because of those charges they, the defendants, managed to have Bausbach fined ten dollars; that Bausbach then paid the ten dollars but appealed to the international body; that subsequently they proceeded to expel him; that Bausbach again appealed to the international body, but while these two appeals were pending he and twenty-seven other defendants then took this action as represented by the paper of July 17th, 1910, to have Bausbach lose his employment with the Rettig Brewing Co., they putting it up to the Rettig Brewing Co., that they would quit work in the event that Bausbach did not quit work. This for the purpose of showing malice on the part of this defendant and the other twenty-seven in their effort to injure Bausbach.

Mr. Snyder: Objected to as incompetent, irrelevant, and immaterial, and has been ruled upon before in the proposition as to Mr. Shugars.

The Court: We think that is simply part of the original offer that we ruled on at 2 o'clock. We make the same ruling.

Offer rejected. Plaintiff excepts. Bill sealed. (8)

Mr. Snyder: I move for a nonsuit at this time for the reason that the plaintiff has failed to show a lawful reason to recover in this case, involving virtually the same proposition that was argued in the offer of Mr. Wilhelm before recess.

The Court: I have not been able to give the authorities a careful enough examination to place upon the record entirely the reason for the action that I am about to take or the authorities which I feel compel me to take that action. But from the examination that I have made I do not believe that there is any evidence here to permit a recovery. Some of the evidence offered was not produced by reason of objection being made to the offers of the plaintiff, and I felt compelled to sustain those objections by the authorities that were handed to me in the short time that was given me to examine them. I will, therefore, direct that a compulsory nonsuit be entered, and enter a rule to strike that nonsuit off, which will permit you to argue that matter, and also give me an opportunity of filing an opinion either sustaining the action I take or reversing it and striking off the nonsuit.

Mr. Wilhelm: I would just as soon have it rest with your honor directing a compulsory nonsuit, because we would be in time to take it to the higher court and determine some questions of doubt that seem to be in your honor's mind regarding these Acts of Assembly, if the matter is finally determined now.

The Court: I will direct a nonsuit to be entered, and I will reserve the right to file an opinion setting forth the reasons why I do so.

Mr. Wilhelm: Yes. Then I ask that your honor direct this testimony to be written out and grant us an exception.

The Court: We grant an exception and let the minutes show that the testimony is directed to be reduced to writing, and also show that I reserve the right to file an opinion in support of the action I have taken. (9)

*Errors assigned* were (1-8) rulings on evidence quoting bill of exceptions and (9) the entry of nonsuit as above.

*William Wilhelm*, with him *R. S. Bashore*, for appellant.—This court has uniformly held that where a tort is committed wilfully, maliciously, or so negligently as to indicate a wanton disregard of the rights of others, exemplary or punitive damages may be found: Lynch v. Troxell, 207 Pa. 162; Gerwig v. W. J. Johnston Co., 207 Pa. 585; Pittsburg, C. & St. L. Ry. Co. v. Lyon, 123 Pa. 140; Huling v. Henderson, 161 Pa. 553; Wirsing v. Smith, 222 Pa. 8.

That recovery can be had for malicious tort, even since the passage of the Act of June 16, 1891, P. L. 300, when workingmen combine for an unlawful reason and with malice, is well settled: Cote v. Murphy, 159 Pa. 420; O'Neil v. Behanna, 182 Pa. 236; Erdman v. Mitchell, 207 Pa. 79.

There is nothing upon the record to show why the court would not allow the appellant to prove the malicious, unlawful and oppressive acts of defendants. The charge is trespass for conspiracy. A conspiracy implies a combination to do injury: Laverty v. Vanarsdale, 65 Pa. 507; Lowe v. Dalrymple, 117 Pa. 564.

*Charles A. Snyder*, for appellees.—It is respectfully submitted that if appellant could have proven all the facts alleged in his several offers, no action could have

been maintained under the law: Cote v. Murphy, 159
Pa. 420; Erdman v. Mitchell, 207 Pa. 79; Orr v. Home
Mut. Ins. Co., 12 La. Ann. 255.

OPINION BY MR. JUSTICE POTTER, October 14, 1912:

The record in this case is unsatisfactory. Upon the
conclusion of the plaintiff's testimony, the defendant's
counsel moved for a nonsuit. The trial judge directed
that a compulsory nonsuit be entered, and at the same
time, without motion by plaintiff, entered a rule to
strike the nonsuit off. Plaintiff's counsel then sug-
gested that the case might rest with the direction for a
compulsory nonsuit, because an appeal might then be
taken at once and an early hearing had in the Supreme
Court. Thereupon the trial judge said: "I will direct
a nonsuit to be entered, and I will reserve the right to
file an opinion setting forth the reasons why I do so."
To this ruling an exception was granted.

In so far as the record shows, no disposition was
made of the rule to strike off the nonsuit. The last
entry upon the docket prior to the appeal is "Compul-
sory nonsuit directed by court." Under the Act of
March 11, 1875, P. L. 6, it has frequently been held that
an appeal does not lie from the entry of a compulsory
nonsuit, but only from the refusal to take the nonsuit
off: Haverly v. Mercur, 78 Pa. 257; Scanlon v. Suter,
158 Pa. 275; Reed v. Casualty Co., 189 Pa. 596; Hallock
v. Lebanon, 215 Pa. 1. The stenographer's notes of tes-
timony at the trial show the entry of a compulsory non-
suit, the entry of a rule to take off such nonsuit, which
remains undisposed of, and then the entry of a nonsuit
a second time. It may be that the trial judge intended
the second nonsuit to operate as a discharge of the rule
to take off the first; but he did not say so, and the Act
of 1875, above referred to, provides expressly that such
rule shall be considered and disposed of by the court in
banc, not by the trial judge alone. The act contemplates
consideration of the questions involved by the court in

banc. This they did not receive in the present case. The judge reserved the right to file an opinion setting forth his reasons for entering the nonsuit, but it does not appear that any opinion has been filed. None is printed in the paper book.

There are nine assignments of error, eight of them being to the rejection of offers of testimony by the plaintiff, or the sustaining of objections to questions. The fifth and eighth assignments allege error in the rejection of offers to prove by the plaintiff and by the defendant, Frederick Wolfe, who was called for cross-examination, the allegations in plaintiff's statement upon which he bases his right of action. The offers were excluded as incompetent, irrelevant and immaterial, and for the further reason, as stated by the trial judge, that he did not consider the evidence, if admitted, sufficient to sustain a verdict. While the offers were too broad in some respects, yet they set out substantially the allegations of plaintiff's statement, and raised the question of the sufficiency of his cause of action. The trial judge clearly intended by his ruling to pass upon plaintiff's right to recover at all, upon the facts shown in his statement. In Mundis v. Emig, 171 Pa. 417, Mr. Justice MITCHELL said (p. 424): "Undoubtedly the general rule is that where an offer is made as a whole, of evidence partly admissible and partly not, the judge may reject it all, and is not bound to separate the good from the bad: Wharton v. Douglass, 76 Pa. 273; Smith v. Arsenal Bank, 104 Pa. 518; Evans v. Evans, 155 Pa. 572. But he may always do so, and we are not prepared to say that in some cases where the offer is clearly competent in substance and the objection is to a small or unimportant part it may not become the duty of a judge to point out, or at least to call upon the party objecting to specify the parts objected to."

In the present case the offers were not objected to or rejected because any specified portions were inadmissible, but on the ground that, as a whole, they were immaterial and irrelevant, and did not make out a case

sufficient to go to the jury. The question ruled on by the court below and raised by these assignments, is then whether the facts alleged by plaintiff, if proved, would constitute a cause of action. In his statement, plaintiff averred that prior to July 18, 1910, for a period of four years and ten months, he had been employed by the Rettig Brewing Company of Pottsville, in the capacity of chief engineer, receiving for his services $27 per week, and that during the term of his employment he had endeavored to render faithful service to the company, and the relations between the company and himself were at all times satisfactory to both parties. That prior to the above date, he had reported to the foreman of the brewery that a night watchman in the employ of the company was stealing bottled goods from the brewery, and that he and another engineer had seen the watchman carrying away stolen goods on different mornings, whereupon the watchman was discharged from the service of the company. That by reason of his action in reporting the dishonesty of the watchman, he incurred the enmity of the defendants, who thereupon, intending to injure the plaintiff, conspired and combined in a malicious and unlawful manner to deprive him of the opportunity to earn his livelihood and support those dependent upon him, and presented the company with a paper containing their signatures, setting forth that if, after twenty four hours, it kept the plaintiff any longer in its employ, they would no longer work for it—they knowing well at the time that it would be left helpless if they carried out their threat, and would be forced to comply with their demand in order to protect its business interests, and that their combination and threat would cause the discharge of plaintiff from its employ. That because of the combination and conspiracy of the defendants, plaintiff was discharged from the service of the company, and suffered damages, for the recovery of which he brought this suit.

This statement sets forth a good cause of action. If the plaintiff could prove the averments in the statement, he was entitled to recover. The offers of proof contained matter which was irrelevant, in so far as it included any reference to what took place in the labor union, whether it resulted favorably to plaintiff or not; but that portion of the offers might well have been rejected, while leaving plaintiff to make proof of the substantial wrong which, as was alleged, had been done to him through the conspiracy to bring about his discharge. Any such purpose was unlawful. In Erdman v. Mitchell, 207 Pa. 79, Mr. Justice DEAN said (p. 91): "A conspiracy is the combination of two or more persons by some concerted action to accomplish an unlawful purpose. It is unlawful to deprive a mechanic or workman of work by force, threats or intimidation of any kind; a combination of two or more to do the same thing by the same means is a conspiracy. That by the legislation referred to such conspiracy is no longer criminal, does not render it lawful. At common law the courts held that such combination was so prejudicial to the public interests and so opposed to public policy as rendered it punishable criminally; but the legislature, which generally determines what is and what is not public policy, has declared that it is no longer a crime or misdemeanor. But this is as far as it has gone, it is as far as it could go without abolishing the Declaration of Rights; to do that the whole people of the Commonwealth must be directly consulted and they must give assent......So the same courts are still bound to protect the humblest mechanic or laborer in his right to acquire property."

In the case just cited the question of damages did not arise, but under the decision in O'Neil v. Behanna, 182 Pa. 236, if the plaintiffs were entitled to an injunction for their protection, they were also entitled to recover such damages as were shown to have been suffered.

In Morris Run Coal Co. v. Coal Co., 68 Pa. 173, Mr. Justice AGNEW said (p. 187): "There is a potency in

numbers when combined, which the law cannot over-
look, where injury is the consequence. If the con-
spiracy be to commit a crime or an unlawful act, it is
easy to determine its indictable character. It is more
difficult when the act to be done or purpose to be accom-
plished is innocent in itself. Then the offense takes its
rule from the motives, the means or the consequences.
If the motives of the confederates be to oppress, the
means they use unlawful, or the consequences to others
injurious, their confederation will become a conspir-
acy."

In the present case, while the record is confused, it is
apparent that a fundamental principle of justice is in-
volved. If the plaintiff can prove the averments in his
statement, he will be entitled to recover such damages
as he can show that he has sustained by reason of the
wrongful acts of the defendants.

In order to avoid the delay which would result from
remitting the record to the court below for formal
amendment, to show that the rule to strike off the judg-
ment of compulsory nonsuit was duly discharged, we
will treat the record as though it had been thus amended.
So regarded, the fifth, eighth and ninth assignments of
error are sustained; and the judgment of the court
below refusing to take off the compulsory nonsuit is re-
versed with a procedendo.

DISSENTING OPINION BY MR. JUSTICE MOSCHZISKER:

The plaintiff alleged that the defendants had entered
into a conspiracy the effect of which was to cause him to
lose the situation by which he earned his living; that the
conspiracy culminated in a written demand made by
these defendants on their common employer which
amounted to a threat that unless the plaintiff was dis-
charged the defendants would embarrass the employer's
business by quitting work in a body. After the trial
judge had refused several offers he entered a nonsuit for
want of sufficient evidence to prove the plaintiff's case.

None of the offers contains any direct tender of proof that the twenty-eight men named as defendants did in point of fact sign the paper which caused the plaintiff to lose his situation, although they inferentially suggest a proffer of evidence to that effect. But conceding that such proofs were tendered, the offers are faulty in that they contain a proffer of testimony to show that the charges against the plaintiff were determined by the central labor body in his favor on August 10, whereas the demand which is claimed to have caused the loss of his position and which marked the culmination of the alleged conspiracy, took place almost a month prior to that time. These offers were objected to not only as "immaterial and irrelevant" but also expressly upon the ground that they were "incompetent," counsel adding "anything that the lodge did in its representative capacity cannot be objected to in court." The fact that the charges were determined in favor of the plaintiff would, undoubtedly, have prejudiced the defendants, and, therefore, if such evidence was not part of the former's case, its acceptance would have been reversible error. The evidence offered on this point did not tend to prove any part of the plaintiff's case; it merely went to establish a fact collateral to all of the issues involved which occurred after the alleged conspiracy had attained its end. Yet without certain evidence contained in these faulty offers there was no sufficient proof of a conspiracy by the defendants against the plaintiff; furthermore, there was no proof that the defendants signed the paper which the plaintiff claimed caused the loss of his position or proper evidence that they authorized the three men who called upon the employer, and are alleged to have said that they were a committee representing the other defendants, to act as their agents in presenting that paper. An agent's authority cannot be proved by testimony given by a third party of the declarations of the alleged agent concerning his power to act: Kaufman v. National Transit Co., 2 Mona. 36; Cham-

bers v. Davis, 3 Whart. 40; Plumsted v. Rudebagh, 1
Yeates 502; Evans v. Owens, 3 Penny. 228; Van Horn v.
Frick, 3 S. & R. 278; Hannay v. Stewart, 6 Watts 487;
Whiting v. Lake, 91 Pa. 349; Central Penna. Tel. & Sup-
ply Co. v. Thompson, 112 Pa. 118; Pepper v. Cairns, 133
Pa. 114, 121; Bible v. Centre Hall Borough, 19 Pa. Su-
perior Ct. 136; this is the only character of evidence
upon that subject which appears upon the present
record.

When an offer containing relevant and irrelevant
matter is made as a whole, the judge is not bound to
separate the good from the bad, but may reject it all:
2 Pepper & Lewis C. R. A. Col. 2237, and cases there
cited. As already stated, the offers in question con-
tained irrelevant matter, which was sufficiently pointed
out by counsel in stating his objection, and hence the
trial judge was justified in rejecting them as a whole
and in entering the nonsuit. Moreover, there was no
proper disposition of the rule to take off the nonsuit,
and for that reason the appeal was premature and
should be dismissed.

After a review of the whole record, I cannot see how,
without a disregard of the settled rules of evidence and
practice, it can be said that the learned court below fell
into error. These rules have been established out of
abundance of experience to insure a proper trial and
to work out exact justice in the greatest number of
cases, and I see nothing in the plaintiff's case which
differentiates it from others or justifies the establish-
ment of a precedent that may well cause confusion to
the profession and give rise to many futile appeals in
the years to come. The plaintiff had the assistance of
able counsel, he had every opportunity to which a liti-
gant is entitled, and even though "a fundamental prin-
ciple of justice" may be involved, it seems to me that, in
this age of clogged courts and delayed litigation, we
should not lose sight of the fact that there are a multi-
tude of other cases pressing for adjudication, and new

trials. should not .be granted unless reversible error plainly. appears upon the record.; I find none here, and, therefore, I enter my dissent.