# Beisel *v.* Gerlach, Appellant.

*Parent and child—Husband and wife—Alienation of daughter's affections—Suit by husband against wife's father—Malice—Parental affection—Evidence.*

The reciprocal obligations and affections of parent and child last through life, before and after marriage, and in the trial of an action by a husband against his wife's father for the alienation of his wife's affection, the greatest care should be exercised so that the assertion of a supposed right of action may not be based upon a proper parental regard for the welfare and happiness of the child.

There is a wide and essential difference between the rights and privileges of a parent in such a case, and those of an intermeddling stranger. The law recognizes the right of a father to advise his daughter about her domestic affairs without incurring liability for alienation, if the advice be given in good faith and prompted by worthy motives even if such advice influenced the daughter in making up her mind to separate from her husband. In other words, there can be no recovery against the father unless it clearly appears that he acted maliciously, without justification and from unworthy motives.

In an action against a father to recover damages for the alienation of his daughter's affections from her husband, it is not only necessary to allege in the statement of claim all the essential elements required to sustain the action, but the measure of proof must be correspondingly high. It will not do to allege an extreme case and support it by indifferent proof, or by proof which fairly considered only shows that the parent did what any parent would have done under similar circumstances for the peace and comfort and happiness of his household.

In this class of cases the first duty rests with the court to say whether the evidence is sufficient to meet the measure of proof required, and whether, if believed, it would warrant a finding by a jury in favor of the plaintiff. A jury in the absence of sufficient evidence should not be permitted to guess at, or conjecture about the rights and liabilities of parents and children involved in cases of this class.

Letters written by the wife to her husband are not sufficient to support a charge that the father had alienated the affections of his daughter, where there is nothing in the evidence to show that the father had anything to do with the letters, or had been responsible for having them written, or that the letters themselves showed alienation of affection or any misconduct on the part of the father.

Argued March 9, 1908. Appeal, No. 109, Jan. T., 1907, by defendant, from judgment of C. P. Northampton Co., Sept.

Term, 1905, No. 71, on verdict for plaintiff in case of George W. Beisel, by his next friend, John Beisel, v. E. J. Gerlach. Before Fell, Brown, Mestrezat, Potter and Elkin, JJ. Reversed.

Trespass to recover damages for alienation of wife's affections.    Before Scott, J.

The opinion of the Supreme Court states the case.

Defendant presented these points :

1. There being no evidence in the cause that defendant made any false and malicious statements of and concerning the plaintiff to his wife, under the pleadings there can be no recovery by the plaintiff.    *Answer :* Refused. [10]

2. There being no evidence in the case that defendant encouraged and compelled plaintiff's wife to receive the attentions of other men, and no evidence that he promised to secure a divorce for her from plaintiff, so that she could marry another man, under the pleading there can be no recovery. *Answer :* Refused. [10]

3. The proof and testimony in the case do not support the allegations of plaintiff's pleadings, and there can be no recovery by him.    *Answer :* Refused. [10]

Verdict and judgment for plaintiff for $2,500.    Defendant appealed.

*Error assigned* among others was (10) answers to defendant's points, quoting them.

*W. E. Doster,* for appellant, cited : Gernerd v. Gernerd, 185 Pa. 233 ; Reading v. Gazzam, 200 Pa. 70.

*James T. Woodring,* for appellee.

Opinion by Mr. Justice Elkin, May 11, 1908 :

This is an important case in the sense that it has to do with the rights, duties and liabilities of a parent in dealing with a married child.    The action is brought by a son-in-law against his father-in-law to recover damages for the alienation of the affection of the wife of the former and daughter of the latter.    At the old common law it is doubtful whether the al-

leged alienation of the affection of a child by a parent under such circumstances was actionable, and while the courts in more recent years have opened the door to this class of cases by recognizing the right to maintain such an action under certain circumstances, it should be borne in mind that the reciprocal obligations and affections of parent and child last through life, before and after marriage, and in the trial of such causes the greatest care should be exercised, so that the assertion of a supposed right of action may not be based upon a proper parental regard for the welfare and happiness of the child. Almost a hundred years ago it was said by Chancellor KENT that " A father's house is always open to his children ; and whether they be married or unmarried, it is still to them a refuge from evil and a consolation in distress. Natural affection establishes and consecrates this asylum. The father is under even a legal obligation to maintain his children and grandchildren, if he be competent and they unable to maintain themselves ; and according to Lord Coke, it is nature's profession to assist, maintain and console the child. I should require more proof to sustain the action against the father than against a stranger. It ought to appear either that he detains the wife against her will, or that he entices her away from her husband from improper motives."

In actions of this character the question is whether the father was moved by malice and without justification, or by a proper parental regard for the welfare and happiness of his child. There can be no law to restrain a father from honestly and properly endeavoring to protect his daughter, by means of counsel and advice concerning her marital relations, so long as he in good faith advises what he believes to be right and proper under the circumstances.

There is a wide and essential difference between the rights and privileges of a parent in such cases and those of an intermeddling stranger. In all such cases the motives of the parent are presumed good until the contrary is made to appear. It is true a father has no right to restrain his daughter from returning to her husband if she desires to do so. On the other hand, he may lawfully give counsel and advice for her own good and shelter her in his own house, if she chooses to remain with him, without making himself liable in an action of

damages. The law recognizes the right of a father to advise his daughter about her domestic affairs without incurring liability for alienation, if the advice be given in good faith and prompted by worthy motives, even if such advice influenced the daughter in making up her mind to separate from her husband. In other words, there can be no recovery against the father unless it clearly appears that he acted maliciously, without justification, and from unworthy motives. This is substantially the rule recognized in all jurisdictions: Burnett v. Burkhead, 21 Ark. 77; Nevins v. Nevins, 68 Kan. 410; Zimmerman v. Whiteley, 134 Mich. 39; Payne v. Williams, 63 Tenn. 583; Tucker v. Tucker, 74 Miss. 93; Reed v. Reed, 6 Ind. Appeal, 317; Bennett v. Smith, 21 Barb. (N. Y.) 439; Young v. Young, 35 Pac. Repr. 592; Huling v. Huling, 32 Ill. App. 519; Brown v. Brown, 124 N. C. 19.

In the present case the amended statement of claim alleges that the defendant did willfully, unlawfully and maliciously cause his daughter to separate from her husband and that he encouraged her to receive the attentions of other men under a promise that he would procure a divorce for her so that she could remarry, by reason of which acts and promises the affection of the wife for her husband was alienated. These allegations were evidently made in the amended statement because the averments of the original declaration were not deemed sufficient to sustain the action against the father under the rule hereinbefore referred to. In this connection it is proper to remark, that it is not only necessary to allege all the essential elements required to sustain the action, but the measure of proof must be correspondingly high. It will not do to allege an extreme case and support it by indifferent proof, or by proof which fairly considered only shows that the parent did what any parent would have done under similar circumstances for the peace and comfort and happiness of his household. We have examined with painstaking care the record in this case, and have carefully read all the testimony in order that it might be properly determined whether the evidence was sufficient to justify the submission of the question to the jury. In this class of cases the first duty rests with the court to say whether the evidence is sufficient to meet the measure of proof required and whether, if believed, it would warrant a finding

by a jury in favor of the plaintiff.  As to the allegation that
the father encouraged the daughter to receive the attentions of
other men, no testimony was offered in support of it and it
must fall.  The case, therefore, must rest on the allegation
that the father by false and malicious statements alienated the
affection of his daughter from her husband and did unlaw-
fully in a spirit of malice, without justification, cause a separa-
tion.  No single fact proven, nor all of the facts combined, are
sufficient to establish these allegations, and it is the duty of
the court to say so.  A jury, in the absence of sufficient evi-
dence, should not be permitted to guess at or conjecture about
the rights and liabilities of parents and children in this class
of cases.  The plaintiff's case rests almost entirely on his
own testimony, the important part of which relates to what oc-
curred at the time the defendant ordered him to leave his house
on April 24, 1905.  There is some further testimony about
what occurred at two subsequent interviews, one when he re-
turned the key of the house and the other at a meeting on the
street.  He is contradicted in all the material facts of his
testimony by the other parties present, but if it was only a
question of credibility, it would have to go to the jury.  In
our opinion, however, his testimony is not sufficient, if be-
lieved, to warrant a finding that the father without just cause
and with malicious purpose did unlawfully alienate the affec-
tions of his daughter from her husband.  The wife, and
daughter, in this case was a young girl fifteen years of age,
wayward and self-willed.  She was seduced by a schoolmate
and became pregnant with child to him.  Several months af-
ter the child was conceived, and before the parents were aware
of the condition of their daughter, Beisel the appellee, a boy
about the same age, came upon the scene, took the place of the
seducer, and subsequently married the girl.  The child was born
a very few months after the marriage and that it has been the
cause of much dissension subsequent events clearly demon-
strate.  A boy husband, and a girl wife, with a child born a
couple of months after marriage, the real father another boy in
the community, a fact known to both young husband and
wife, furnished a situation full of discord and dissension, all of
which quickly followed.  The boy husband was poor, with-
out a home to shelter his young wife, and accepted the hos-

pitality of the father, whom he now tries to mulct in damages, but who then furnished him and his family food and shelter. The young couple acted like the children they were. At times they seemed fond of each other, and at other times, they quarreled and bickered and pouted, then made up again and seemed to forget their troubles. Sometimes the young wife would refuse to speak to her husband and ordered him away and thus the trouble grew. It finally culminated in a quarrel which resulted in wearing out the patience of the father who ordered the young husband to leave the house and not return to it. Just what occurred at this interview is in some doubt. The young husband says the father commanded him to leave and that he would not allow his wife to go with him and that he said his daughter should never live with him again. This is all denied by the father, mother and brother who were present, but at most it was only an expression of the displeasure of the father whose patience had been worn out, and the peace of whose household had been disturbed by these young people. There was no malice in this ; it was righteous indignation manifested in temper and fully justified under the circumstances.

As to the letters offered in evidence, we are inclined to think there is some force in the suggestion of the learned counsel for appellant that they were improperly admitted for the purpose offered. They showed not any alienation of affection, but continued affection by the wife for her husband. However, we do not deem it necessary to pass upon the question of their admissibility because, if properly admitted, there was nothing to show that the father had anything to do with them, or had been responsible for having them written. Certainly under these circumstances nothing said in the letters would be sufficient to support a charge that the father had alienated the affections of the daughter.

Our conclusion is that the testimony was wholly insufficient to support the action, that the case should not have been submitted to the jury and that a verdict should have been directed for the defendant.

Judgment reversed and is here entered for defendant.