## Ickes *v.* Ickes, Appellant.

*Husband and wife—Alienation of husband's affection—Suit
against husband's father—Burden of proof—Evidence.*

1. In an action by a wife against her husband's father to re-
cover damages for the alienation of her husband's affections, the
measure of proof required to sustain the claim against the de-
fendant, is greater than it would be against a mere intermeddling
stranger, inasmuch as a father has the right to counsel and ad-
vise his son in good faith as to the position in which the son has
placed himself by an unfortunate and unhappy marriage; but if
there is evidence sufficient to sustain a verdict for plaintiff, the
case must go to the jury.

*Practice, C. P.—Trial—Improper remarks of counsel—Contin-
uance—Exception.*

2. A mere objection to alleged improper remarks of counsel, and
an exception noted is not sufficient to sustain an assignment of
error complaining of such remarks. The assignment must show a
request for the withdrawal of a juror and a continuance of the
case, a refusal of such request, and an exception granted by the
trial judge.

*Evidence—Proof of intention—Declarations—Hearsay—Alien-
ation of husband's affections.*

3. When the court determines in any case that a man's state
of mind, or the reason why he did a certain act, is a relevant prin-
cipal fact to be ascertained, what he may have said concerning it
is usually the best and only evidence that can be obtained on the

subject; but the proofs must always be restricted to declarations indicating the state of mind at the time of their utterance.

4. When evidence of this character is produced sufficient to show a then present intention, or a state of mind, it may be assumed to have continued and formed the motive which controlled the doing of a subsequent act following closely thereafter, if under all the surrounding circumstances one would. naturally associate the two together, and it is for the jury to draw the conclusion.

5. In an action by a wife against her husband's father to recover damages for the alienation of her husband's affections resulting in the husband's desertion of his wife, the defendant may show by a witness that eight or ten days before the husband's departure the witness had heard him accuse his wife of infidelity, and the latter's confession that the child she was then carrying was not the offspring of her husband, and that only the day before the husband left he had said to the witness that he was about to do so because he was not the father of the child.

6. Such testimony is competent evidence of a relevant fact under the established rules which deal with declarations indicating intention or state of mind.

7. If, however, such evidence is included in the same offer with other irrelevant and inadmissible evidence, the judge may reject the whole offer, inasmuch as he is not bound to separate the good from the bad.

*Husband and wife—Alienation of husband's affections—Evidence.*

8. In an action by a wife against her husband's father to recover damages for alleged alienation of her husband's affections resulting in his deserting her, it is error to permit the plaintiff to prove efforts made by her and expenses incurred to support her child after the alleged desertion; and it is also error to permit the defendant to be cross-examined concerning an authority given to him by his son to collect the latter's wages as a member of the navy in which he enlisted after he left his wife, and as to the amounts the defendant had received from such wages.

9. In an action to recover damage for the alienation of a husband's affection, where a witness for the defendant swears that he knew the plaintiff by sight and identifies her in the court room as the woman he had seen the defendant's son talking to on a certain occasion, it is not reversible error to refuse to permit the witness to testify that the son had said to him that the woman with whom the witness had heard him talking on the occasion referred to, was his wife.

Argued April 15, 1912.   Appeal, No. 130, Jan. T., 1910, by defendant, from judgment of C. P. Blair Co., Jan. T., 1910, No. 272, on verdict for plaintiff in case of Mary M. Ickes v. George A. Ickes.   Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ.   Reversed.

Trespass to recover damages for the alleged alienation of the affections of plaintiff's husband.   At the trial it appeared that on April 19, 1905, Mary M. Kinney, the plaintiff was married to George L. Ickes, defendant's son, who was then nineteen years of age.   The plaintiff was twenty-five years of age and pregnant at the time of her marriage.   On May 27, 1905, young Ickes enlisted in the United States Navy.   Plaintiff claimed that the defendant had alienated his son's affection from his wife resulting in the desertion.

When the plaintiff was on the stand she was asked this question:

"Q. While your husband has been away have you been able to support yourself and child?

"Objected to; it is irrelevant and immaterial.   The issue involved is the alienation of the affections of her husband by the defendant, not the manner in which she has been supported.

"By the Court:  We will allow the question to be put, and seal a bill for the defendant. (5)

"A. Well, when he was a little baby, six weeks old, I worked by the week a couple months and after I worked by the day and paid for the baby."

"Q. What do you pay for the support of your child?

"Objected to as irrelevant and immaterial.

"By the Court:  We will overrule the objection and seal a bill for the defendant. (6)

"A. Ten dollars a month."

"Dr. G. A. Ickes, being under cross-examination, was asked:

"Q. Have you lodged a copy of that power of attorney in the treasury department at Washington?   A. Not as I know of.

"Q. Did you ever have a power of attorney from your son on record in the treasury department at Washington?

"Objected to.

"Q. State what you drew of your son's wages in 1906?

"Objected to as irrelevant and immaterial.

"By the Court: We will allow it to be put, and seal a bill for the defendant." (11)

"A. I never drew any of his wages.   Upon his own authority he sent me money.

"Q. I asked you the amount, what amount did he send you?

"Objected to.

"Q. How long did you draw wages?

"Objected to as irrelevant and immaterial.

"We will allow it to be asked, and seal a bill for the defendant." (12)

"Q. How much money did you draw from the treasury department on account of the wages of your son?

"Objected to.

"By the Court: The objection is overruled, and note an exception for defendant." (13)

G. H. Carr, a witness for defendant having testified that he saw Mr. and Mrs. Ickes together about eight or ten days before the former left Altoona, testified as follows:

A. I stopped right in the shade of the telegraph pole and I listened and I heard him say, "Now Margaret you might as well acknowledge to me all about it, because by God if you don't there will be trouble for you," and she said "George" she says, "it doesn't belong to you." He says, "It don't," he says, "You are too far gone." She says "No, I am not, I am only about two months gone." He says, "By God, you can't fool me, you are too big,"

and he says "you might as well acknowledge the corn right here," so she busted out in a cry and she acknowledged to it that it didn't belong to him.

Q. Did you recognize the man? A. Why certainly I did; my time was getting a little bit short and I picked up and passes right by them.

Q. How close did you pass to them? A. They were up against the fence and I walked right along the sidewalk about the center of the walk, I was. There was no board walk there, it was just an ash walk at that time.

Q. Did you speak to either of the parties? A. I spoke to George as I went by.

Q. And you say this was just about eight or ten days before George—

Objected to.

A. Along about eight or ten days as I have previously said.

Q. Did you see George Ickes after this? A. I did.

Q. When? A. If my mind serves me right it was the Thursday before he left; I saw him coming up from his father's yard with his bucket in his hand, and when he was just about the dining room door I stepped out on my porch and whistled and called him up—

Objected to, that statements made the day before the husband left are not part of the res gestæ and are irrelevant and immaterial.

By the Court: The objection is sustained and seal a bill for the plaintiff. (23)

Counsel for defendant also offers to show by C. H. Carr, the witness on the stand that the day before George Ickes left he had a conversation with this witness, in which he told the witness that he had trouble with his wife and was going to leave, and that the witness told him "I know all about it, I overheard the conversation." And he then and there told this witness that his reason for leaving was that his wife was in the family way and that he wasn't the father of the child.

This happened the day before he left, and is offered for the purpose of showing his reason for leaving.

Objected to as too remote from the time of the leaving to be a part of the res gestæ and is irrelevant and immaterial.

By the Court: The objection is sustained and seal a bill for the defendant. (24)

By Mr. Vaughn: Q. When did you find out that this lady, the plaintiff, that George Ickes was talking to was his wife? A. I think it was on Thursday before he went away when I called him up to the fence and he acknowledged it, the whole thing.

Objected to and asked to be stricken out.

By the Court: What George said can be stricken out.

Counsel for defendant offers to show by this witness that the Thursday before George Ickes left the plaintiff, who lived practically next door to Ickes had a conversation with George Ickes, in which George Ickes said to him that the woman he was talking with that evening was his wife.

Objected to.

By the Court: Exception noted for defendant and bill sealed. (25)

Q. Do you recognize the plaintiff as the woman who was there that evening? A. I took her to be this lady.

Verdict and judgment for plaintiff for $3,500. Defendant appealed.

*Errors assigned* were (1) as to remarks of counsel; (1½, 2, 3, 4, 27) various rulings by which the case was left to the jury; (5, 6, 11, 12, 13 and 25) rulings on evidence quoting the bill of exceptions.

*W. Frank Vaughn, Thomas H. Greevy* and *E. G. Brotherlin,* for appellant.—In an action by a wife for enticing away her husband evidence of declarations by

the husband are admissible to show what caused the separation: Williams v. Williams, 20 Colo. 51 (37 Pac. Repr. 614); Glass v. Bennett, 89 Tenn. 478 (14 S. W. Repr. 1085); Lyon v. Lyon, 197 Pa. 212; Rinesmith v. Ry. Co., 90 Pa. 262; Phillips Gas & Oil Co. v. Glass Co., 213 Pa. 183.

Giving advice to a wife, which induces her to leave her husband, is not actionable if given honestly with a view to the welfare of both parties, by one who has no special influence or authority over her: Tasker v. Stanley, 10 L. R. A. 468; Biesel v. Gerlach, 221 Pa. 232.

The declarations were not too remote from time of husband's leaving: Gilchrist v. Bale, 8 Watts 355; Rinesmith v. Ry. Co., 90 Pa. 262; Com. v. Werntz, 161 Pa. 591; Coll v. Easton Transit Co., 180 Pa. 618; Keefer v. Life Ins. Co., 201 Pa. 448.

Declarations of husband showing his real reason for leaving were relevant and material: Williams v. Williams, 20 Colo. 51 (37 Pac. Repr. 614); Scott v. O'Brien, 16 L. R. A. (N. S.) 742; Gilchrist v. Bale, 8 Watts 355.

*R. A. Henderson* and *W. C. Fletcher,* for appellee.— Declarations to become part of the res gestæ, must have been made at the time of the act done, which they are supposed to characterize; and have been well calculated to unfold the nature and quality of the facts they were intended to explain, and so to harmonize with them, as obviously to constitute one transaction: Enos v. Tuttle, 3 Conn. 247; Lush v. McDaniel, 13 Ired. 485; Rowland v. Walker, 18 Ala. 749; Powell v. State, 101 Ga. 9 (29 S. E. Repr. 309); Reg. v. Gloster, 16 Cox Cr. 471; Gilchrist v. Bale, 8 Watts 355; Kidder v. Lovell, 14 Pa. 214; Lyon v. Lyon, 197 Pa. 212.

OPINION BY MR. JUSTICE MOSCHZISKER, November 7, 1912:

The plaintiff brought an action of trespass against

the defendant, her father-in-law, alleging that he had alienated the affections of her husband and induced him to leave her and join the U. S. Navy. She recovered a verdict upon which judgment was entered, and the defendant has appealed.

The appellant contends that the plaintiff did not produce evidence sufficient to sustain the verdict and that judgment should have been entered in his favor. The plaintiff had lived as a servant in the defendant's family, and had subsequently married his son, who was then 19 years of age, 6 years her junior, and earned only 77 cents a day. After this young man had thus improvidently become a husband and undertaken the support of a wife, who shortly expected a child, it was the right of the defendant, without incurring any liability to his daughter-in-law, to counsel with his boy and advise him in good faith as to the position in which he was placed; and in regard to any advice the father may have given, his motives would be presumed to be good. While the law would not permit him maliciously to break up the marriage, yet, since the defendant was the father of the plaintiff's husband, the measure of proof required was greater than it would have been had he been a mere intermeddling stranger; Gernerd v. Gernerd, 185 Pa. 233. But, after a review of all the evidence, we cannot say that the plaintiff's proofs, if believed, were insufficient to sustain a verdict in her favor. Hence, the case could not have been withdrawn from the jury, and assignments 1½, 2, 3 and 4, complaining of the refusal of certain points for charge presented by the defendant, which, as drawn, amounted to requests for binding instructions, cannot be sustained; these, with assignment 27, which complains of the failure to enter judgment non obstante veredicto, are overruled.

The first assignment does not cover anything done by the court below; it complains of certain remarks of plaintiff's counsel in his opening address to the jury.

An objection was made at the time and an exception noted, which was all that was asked.. Had a request for the withdrawal of a juror and a continuance of the case been made and refused, and an exception granted, the incident would have been reviewable here; but as it is, nothing is before us and the assignment is dismissed: Brown v. Central Pa. Traction Co., 237 Pa. 324.

The 23d and 24th assignments suggest a most interesting point. C. H. Carr, a witness for the defendant, had testified that he knew both the plaintiff and her husband; that about the 18th of May, 1905, eight or ten days before the latter had left his home, the witness had seen the couple together on the street and overheard a conversation between them in which the wife had confessed to her husband that the child about to be born was not his. At this point the following offer was made: "Counsel for defendant also offers to show by C. H. Carr, the witness on the stand, that the day before George Ickes left he had a conversation with this wit-. ness, in which he told the witness that he had trouble with his wife and was going to leave, and that the witness told him 'I know all about it, I overheard the conversation.' And he then and there told the witness that his reason for leaving was that his wife was in a family-way and that he wasn't the father of the child. This happened the day before he left, and is offered for the purpose of showing his reason for leaving." This was, objected to as "Too remote from the time of the leaving to be a part of the res gestæ," and for other reasons. The objection was sustained and the appellant now assigns the rejection of the offer as error.

The plaintiff's contention was that the defendant had so worked upon the mind of his son as to cause him to leave her and join the navy. The defense's reply was that the husband had left, not because of any advice or persuasion of his father, but as the result of other moving causes operating upon his mind at the time, the

chief of which was the alleged unfaithfulness of his wife. This raised an issue as to the motive which caused George Ickes to leave, which involved his state of mind as a principal fact in the case. How could this be proved? When Ickes was called his testimony was objected to and refused because he was the husband of the plaintiff. The only way that his state of mind could possibly be shown was by proof of things that he said and did at the time; but this does not necessarily mean at the very moment of his departure. In the present case, as in many other cases in the books, confusion has been caused by losing sight of the distinctions between contemporaneous spontaneous exclamations growing out of and explanatory of an event, or other declarations directly connected with and forming part of the res gestæ, and declarations relied upon solely to show an existing intention or state of mind. When the court determines in any case that a man's state of mind, or the reason why he did a certain act, is a relevant principal fact to be ascertained, that is the particular thing under immediate investigation, and what he may have said concerning it is usually the best and only evidence that can be obtained on the subject; but the proofs must always be restricted to declarations indicating the state of mind at the time of their utterance. When evidence of this character is produced, sufficient to show a then present intention, or state of mind, it may be assumed to have continued and formed the motive which controlled the doing of a subsequent act following closely thereafter, if under all the surrounding circumstances one would naturally associate the two together; and it is for the jury to draw the conclusion.

With this understanding of the principals just adverted to, we take up the assignments under consideration and find that 8 or 10 days before the departure of George Ickes the witness had heard him accuse his wife of infidelity and the latter's confession that the child

she was then carrying was not the offspring of her husband, and that only the day before Ickes left he had said to this witness that he was about to do so because he was not the father of the child. What better character of proof was it possible to obtain in support of the defendant's contention concerning the motive which induced his son to leave the plaintiff and join the navy? The testimony offered might not have convinced the jury, but it was competent evidence of a relevant fact under the established rules which deal with declarations indicating intention or state of mind. The general principle is well stated in Sugden v. St. Leonards, 1 P. D. 154, where MELLISH, L. J., said: "Whenever it is material to prove the state of a person's mind, or what was passing in it, and what were his intentions, there you may prove what he said, because that is the only means by which you can find out what his intentions were." Commonwealth v. Trefethen, 157 Mass. 180, is a leading American case upon the point; the defendant was charged with murder and it was the theory of the defense that the alleged victim had committed suicide. The defendant's counsel offered a witness to prove that the deceased had come to her (the day before she left her home and about three weeks before her dead body was found in a river) and stated that she was five months pregnant with child, and that she was going to drown herself. The offer was refused, and on appeal this ruling was reversed, the court saying: "When evidence of the declarations of any person is offered for the purpose of showing the state of mind or intention of that person at the time the declarations were made, the declarations undoubtedly may be so remote in point of time, or so altered in import by change in the circumstances of the maker, as to be wholly immaterial, and wisely to be rejected ...... The counsel for the defendant concede that the declaration in this case is not, under our decisions admissible as a part of what has

been called the res gestæ, although some courts have
admitted similar declarations on this ground, and they
also concede that to make a declaration admissible on
this ground, it must accompany an act which directly or
indirectly is relevant to the issue being tried, and must
in some way qualify, explain or characterize that act,
and be in a legal sense a part of it. . . . . . . They contend
that the declaration is some evidence of the state of
mind or intention of the deceased at the time she made
it; that the intention which it tends to prove is a ma-
terial fact, which in connection with other facts proved,
tends to support the theory of suicide; and that the
state of mind or intention in the mind of a person, when
material, can be proved by evidence of his declarations,
as well as of his acts, particularly when the person
. . . . . . cannot be called as a witness . . . . . .   The funda-
mental proposition is, that an intention in the mind of a
person can only be shown by some external manifesta-
tion, which must be some look or appearance of the face
or body, or some act or speech, and that proof of either
or all of these for the sole purpose of showing state of
mind or intention of the person is proof of a fact from
which state of mind or intention may be inferred." In
State v. Mortensen, 26 Utah 312, another murder case,
it was contended at trial that the defendant had in-
duced the deceased to come to his house to collect some
money on the evening of the homicide.   On appeal, the
court said:  "The appellant also complains of the action
of the court in permitting, over the objection of the
defense, the wife of the deceased to testify that after
supper, on the night of the homicide, as her husband was
leaving the house, he closed the door and said to her:
'I am going over to Peter's (the defendant's) for a few
minutes to collect some money.  I will be back soon.'
. . . . . . They are declarations of the intention and pur-
pose of the deceased to meet the defendant, and were
admissible, as original evidence, under one of the ex-

ceptions to the rule of hearsay. Some courts admit such
declarations as a part of the res gestæ, but we think
that they more properly come under the exceptions to
the rule against hearsay evidence. The evidence of these
declarations was not admitted for the purpose of show-
ing that the deceased was actually at the house of the
defendant, but to show what was in his mind—what his
intentions were—at the time of the utterance. Evi-
dence of what a person's intentions were is relevant
circumstantially to show that he afterwards carried out
his designs. . . . . . . These declarations, as appears, were
made in a natural way, and not under circumstances of
suspicion, and therefore proof of them was admissible
not only to show the intentions of the deceased, but also
as showing his intention of going to the house of the de-
fendant for a legitimate purpose." Rens v. Mutual Re-
lief Ass'n, 100 Wis. 266, is another illustrative case;
it was an action on a life insurance policy which did
not cover death by suicide. The defense was that the
insured had committed suicide, and a witness was per-
mitted to testify to declarations by the insured within
twenty-four hours prior to his death to the effect that
he intended to kill himself. In sustaining this the ap-
pellate court said: "The evidence of the declarations of
the deceased within twenty-four hours preceding his
death, tending to show an intention to commit suicide,
was properly admitted. The question was as to the in-
tention of Rens, the insured, in firing the shot which
resulted in his death, and, when such is the question,
declarations of the party which are so close in point of
time to the act as to justify a reasonable probability
that he carried his declared intention into execution are
admissible as original evidence, providing they are made
under circumstances precluding the idea of misrepre-
sentation or bad faith." Also see Hale v. Life Indemnity
& Ins. Co., 65 Minn. 548; Sharland v. Washington Life
Ins. Co., 101 Fed. Repr. 206; Powell v. Olds, 9 Ala. 861;

Viles v. Waltham, 157 Mass. 542; Hodge v. State, 26 Fla. 11; State v. Hayward, 62 Minn. 474; Worth v. Chicago, &c., Ry. Co., 51 Fed. Repr. 171; Conn. Mut. Life Insurance Co. v. Hillmon, 145 U. S. 285; State v. Davis, 69 N. H. 350; Folks v. Burnett, 47 Mo. App. 564; State v. Power, 24 Wash. 34; and Seifert v. State, 160 Ind. 464. While we cite no Pennsylvania case, we find none adverse to the doctrine here stated, and we have Gilchrist v. Bale, 8 Watts 355, where, under circumstances somewhat like those of the case at bar, testimony of similar import was admitted, although, on the facts peculiar to that case, upon a different theory.

That the greater part of the testimony called to our attention in the present assignments was admissible upon the theory which we have elaborated, is amply sustained by the above line of cases and other like authorities, such as 3 Wigmore on Evidence, Section 1725, and its admissibility was not at all dependent upon the authorities on contemporaneous spontaneous declarations connected with or induced by the happening of an event. But part of the testimony offered, as presented, was irrelevant and inadmissible, viz, the tender of proof that the witness had said to George Ickes, "I know all about it, I overheard the conversation." While it may be that the admission of this testimony would not have been cause for a reversal, yet we cannot say that its refusal was error; and when an offer containing relevant and irrelevant matters is made as a whole the trial judge is not bound to separate the good from the bad but may reject it all: Sennett v. Johnson, 9 Pa. 335; Wharton v. Douglass, 76 Pa. 273; Smith v. Arsenal Bank, 104 Pa. 518; Citizens & Miners Savings Bank & Trust v. Gillespie, 115 Pa. 564; Evans v. Evans, 155 Pa. 572; Mundis v. Emig, 171 Pa. 417; Mease v. United Traction Co., 208 Pa. 434. Under the circumstances, taking the offer as a whole, it cannot be held that error was committed in the rulings complained of, and the assignments will

have to be dismissed. We have, however, treated the subject fully because, on other assignments which we are about to discuss, the case must go back for a re-trial.

The 5th and 6th specifications assign for error the admission of certain testimony by the plaintiff concerning efforts made and expenses incurred to support her child after the alleged desertion, and the 11th, 12th and 13th complain of parts of the cross examination of the defendant, permitted under objection and exception, in which he was interrogated concerning an authority given to him by his son to collect the latter's wages as a member of the navy and as to the amounts he had received therefrom. None of the matters covered by the testimony called to our attention in these assignments was relevant to the issues being tried, and its effect must have been to prejudice the jury against the defendant and swell the damages in favor of the plaintiff. In a case of this kind, where human sentiment is apt to play a leading part, the trial judge should be most cautious not to admit evidence which might have a tendency to bias the jury against either side, unless clearly relevant and competent; and this is particularly so where the action is against a father, for there a clear case of want of justification must be shown before he can be held responsible: Gernerd v. Gernerd, 185 Pa. 233, 237. These assignments are sustained.

The 25th assignment complains of the refusal to admit in evidence testimony by Carr to the effect that George Ickes had, said that the woman with whom the witness had heard him talking was his wife. As to this it is sufficient to say that the testimony was entirely unnecessary, since Carr had previously sworn that he knew the plaintiff by sight and had identified her in the court room as the woman he had seen Ickes talking to. This assignment is overruled. We have examined all the remaining assignments; they have no merit and may be dismissed without further comment.

The judgment is reversed with a venire facias de novo.

FELL, C. J., and BROWN and STEWART, JJ., concur in the reversal of this judgment, but dissent from so much of the opinion of the majority of the court as sustains the twenty-third and twenty-fourth assignments of error.