[No. 2721. July 17, 1923.]

## BIRCHFIELD v. BIRCHFIELD

### SYLLABUS BY THE COURT

1. An action or ruling of the trial court, which is not referred to, nor set forth in any manner in the assignments of error, cannot be reviewed by this court.

2. In an action for alienating the love and affection of the plaintiff's husband, the burden is upon plaintiff to establish the existence of such love and affection, and that the defendant maliciously caused the alienation thereof.

3. In such an action against a father-in-law, a greater degree of proof is required to show that such parent acted maliciously than would be required in a case against an intermeddling stranger, as the motive of such parent is presumed to be good, and to flow from a natural parental affection for the welfare and happiness of the child.

4. Evidence reviewed, and held not to establish any interference on the part of the parent, nor that he acted with malice.

Appeal from District Court, Luna County; Ryan, Judge.

Action by Vena Birchfield against W. P. Birchfield. Judgment for defendant and plaintiff appeals. Affirmed.

A. M. Edwards, of Santa Fe, for appellant.

A. W. Pollard, of Deming, and Renehan & Gilbert, of Santa Fe, for appellee.

### OPINION OF THE COURT

BRATTON, J. This is a suit instituted by the appellant, Vena Birchfield, against her father-in-law, W. P. Birchfield, by which she sought to recover damages in the sum of $50,000 for wrongful, unlawful, and malicious alienation of the love and affection of her husband, Steve Birchfield, who is the son of the appellee. At the close of the plaintiff's case, the trial court directed a verdict for the defendant.

[1] It is first contended by the appellant that the trial court erred in striking from the record and withdrawing from the consideration of the jury all the

testimony given by the plaintiff concerning statements made to her by her husband. This action on the part of the trial court is nowhere assigned as error. There are only two assignments of error, each and both of which relate to the correctness of the action of the trial court in directing a verdict against her. Neither of them mention, relate to, nor concern, either directly or indirectly, the withdrawal of such evidence from the consideration of the jury. Section 22, c. 43, Laws 1917, expressly requires assignments of error to be filed in this court in all civil cases, that they be copied upon a separate paper, and that each error relied upon shall be stated in a separate paragraph. The relevant portion of this section reads:

"On appeals and writs of error, the appellant and plaintiff in error shall assign errors and serve a copy of such assignment of error on the opposite party in the same manner that copies of pleadings are served, and file a copy with the clerk of the Supreme Court on or before the return day to which the cause is returnable, which said assignment of errors shall be written on a separate paper and filed in the cause, and shall also be copied into the brief of the appellant or plaintiff in error, and each error relied upon shall be stated in a separate paragraph. In default of such assignment of error and filing the same the appeal or writ of error may be dismissed and the judgment, order, decision or conviction, as the case may be, affirmed, unless good cause for failure be shown. Unless exception is filed or taken to the assignment of error the opposite party shall be deemed to have joined in error. upon the assignment of error so filed."

In some states the necessity of filing assignments of error has been dispensed with by statute, but not so in this state. They are expressly required in all civil cases. Their form is not prescribed further than that each error relied upon shall be stated in a separate paragraph.

In legal contemplation, the assignments of error so required are designed to bring together and set forth in an orderly manner the errors which are charged to have been committed, and which are relied upon to obtain a reversal of the case. In this sense they perform the function of a complaint. Manifestly, therefore, an action or ruling of the trial court, which is not referred

to, nor set forth in any manner in the assignments of error, cannot be reviewed. This is not a question of the form or sufficiency of the assignments of error, but rather the nonexistence thereof. So far as the error appellant now complains of is concerned, the situation is the same as if no assignments had been filed. Under the rule of decision in this state we cannot review the subject. In Re Murray, Receiver, 19 N. M. 53, 140 Pac. 1042, this court said:

"From the above it will be seen that the statute contemplates that assignments of error shall be filed in all civil cases taken to the Supreme Court by appeal, or in which a writ of error may have been sued out. The assignment of error is, in legal contemplation, the complaint of the appellant or plaintiff in error. In it he sets forth the errors committed by the trial court, which he seeks to have reviewed bv the appellate court. In a sense, it perofrms the same office as does a complaint filed in the trial court. Without a complaint the jurisdiction of the trial court cannot be invoked. In the absence of an assignment of errors, where the same is required by statute or rule of court, no relief is asked of the appellate court, and it will not enter upon a consideration of the case."

The only remaining question is whether there was any evidence produced by the plaintiff which formed an issue to be submitted to the jury. If such existed, the court erred in directing a verdict. The appellant was the only witness who testified. At the close of her testimony she rested her case, and the directed verdict followed. She testified to being in appellee's home in Deming on several different occasions, and was well and kindly treated by appellee and his entire family, except when she suffered a spell of sickness, during which she was neglected; that appellee expressed himself as being pleased with her marriage to her husband, who is referred to throughout as Steve, and further said that he thought Steve had overdone himself in his marriage to her. He suggested that she raise all the money she could, and he would loan Steve a like amount, with which they could embark in the cattle business, he taking a mortgage on the entire enterprise to secure such loan. He stated on different occasions that he intended to purchase a ranch in Mexico adjoin-

ing one he then owned and give it to Steve, thereby starting him in the cattle business. She detailed at length a conversation which she had with him in El Paso, during which he told her that Steve had gone into Mexico, and that under the law that constituted divorcing them, as when a man went into a foreign country that of itself divorced himself and wife, and during the same conversation suggested that she obtain a divorce. When she accused him of separating herself and husband, he strongly denied this, and said he would resist through the courts any such charge, and would further insert a notice in the local papers denying any connection or responsibility for their separation. The testimony of the appellant, detailing statements made to her by her husband, having been stricken from the record, there remains no evidence whatever that the appellee ever discussed the subject of this marriage with his son; there is no evidence that he ever expressed himself to the son upon the subject; there is no evidence that he spoke to his son in terms of criticism or disparagement concerning the appellant. The record does not disclose by direct or circumstantial evidence that the son ever heard his father express himself with regard to such marriage, or that the son ever knew of any displeasure his father may have entertained upon the subject.

[2, 3] The loss of the society, companionship, fellowship, comfort, conjugal affections and support of the husband, when caused by any third person maliciously invading the hallowed precincts of the home, and without justification severing the ties which bind the husband and wife together, from which a separation flows, is tortious, and the person who does so may be required to respond in damages. But the burden is upon the plaintiff to show that the opposite spouse did love and had affection for him or her, as the case may be, and that the defendant maliciously caused the alienation thereof by direct interference. And in a case like the one we are now considering, where the defendant is the father-in-law of the plaintiff, the rule is stronger,

and a greater degree of proof is required, than when the defendant is an intermeddling stranger, because, even where it is shown that the parent-in-law has interfered with the happiness of the plaintiff and her spouse, it is presumed that such action emanated from proper motive, arising out of parental interest in the welfare and happiness of the child. In 13 R. C. L. p. 1474, it is said:

"As a general rule, to justify a verdict against a parent there should be much stronger evidence of improper motives in the defendant than where the action is against a stranger. So bad or improper motives on the part of a parent in taking his or her child from her husband or his wife, or in permitting the child to return to the parental home, cannot be presumed; the burden proving them must be assumed by the plaintiff in an action against the parent for alienating the spouse's affections."

The text is supported by many authorities, of which we cite Hutcheson v. Peck, 5 Johns. (N. Y.) 196; Tucker v. Tucker, 74 Miss. 93, 19 South. 955, 32 L. R. A. 623; Multer v. Knibbs et ux., 193 Mass. 556, 79 N. E. 762, 9 L. R. A. (N. S) 322, 9 Ann. Cas. 958; Beisel v. Gerlach, 221 Pa. 232, 70 Atl. 721, 18 L. R. A. (N. S.) 516; Ickes v. Ickes, 237 Pa. 582, 85 Atl. 885, 44 L. R. A. (N. S.) 1118; Reed v. Reed, 6 Ind. App. 317, 33 N. E. 638, 51 Am. St. Rep. 310; Barton v. Barton et al., 119 Mo. App. 507, 94 S. W. 574; Crowell et al. v. Jeffries (Ind. App.) 134 N. E. 908; Roberts v. Cohen, 104 Or. 177, 206 Pac. 293.

In Beisel v. Gerlach, supra, it is said:

"There is a wide and essential difference between the rights and privileges of a parent in such cases and those of an intermeddling stranger. In all such cases the motives of the parent are presumed good until the contrary is made to appear. It is true a father has no right to restrain his daughter from returning to her husband if she desires to do so. On the other hand, he may lawfully give counsel and advice for her own good, and shelter her in his own house, if she chooses to remain with him, without making himself liable in an action of damages. The law recognizes the right of a father to advise his daughter about her domestic affairs, without incurring liability for alienation, if the advice be given in good faith and prompted by worthy motives, even if such advice influenced the daughter in making up her mind to

separate from her husband. In other words, there can be no recovery against the father, unless it clearly appears that he acted maliciously, without justification, and from unworthy motives."

And in Ickes v. Ickes, supra, this language was used in declaring this rule:

"While the law would not permit him maliciously to break up the marriage, yet, since the defendant was the father of the plaintiff's husband, the measure of proof required was greater than it would have been had he been a mere intermeddling stranger."

Not only must there be proof of direct interference on the part of the defendant, which results in alienating the love and affection of plaintiff's spouse, but it must affirmatively appear that such interference proceeded from a malicious design. Even though there be interference, yet, if it does not arise from and is not prompted by malice, the case must fall, as such is a necessary ingredient of the tort. Malice, when used in this sense, does not mean that which proceeds from a mean, hateful or revengeful disposition, but may imply conduct from an ill-regulated mind, not sufficiently cautious before it occasions the injury. Roberts v. Cohen, supra.

[4] There is no evidence that the appellee interfered with the love and affection of his son for the appellant; neither is there any evidence that he acted with any malice in the matter. Obviously, therefore, the trial court correctly instructed the jury to return a verdict in appellee's favor. Young v. Young, 8 Wash. 81, 35 Pac. 592; Sheriff v. Sheriff et ux., 8 Okl. 124, 56 Pac. 960; Stanley v. Stanley et al., 27 Wash. 570, 68 Pac. 187.

The judgment should be affirmed; and it is so ordered.

PARKER, C. J., and BOTTS, J., concur.