The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number:

Filing Date: January 26, 2026

**NO. S-1-SC-40623**

**JAMES F. BUTTERWORTH,**

Plaintiff-Appellee,

v.

**ETHAN JACKSON,**

Defendant,

and

**DR. SARAH SMITH,**

Intervenor-Appellant.

**CERTIFICATION FROM THE NEW MEXICO COURT OF APPEALS**
**Jeffrey A. Shannon, District Judge**

Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Deana M. Bennett
Celina C. Baca
Albuquerque, NM

Gerstein Harrow LLP
Jason Harrow
Los Angeles, CA
Charles Gerstein
Washington, DC

for Intervenor-Appellant

Cuddy & McCarthy, LLP
Aaron J. Wolf
Santa Fe, NM

for Defendant


Boyle Law Office
Gary W. Boyle
Santa Fe, NM

for Appellee

**OPINION**

**THOMSON, Chief Justice.**

{1}     On certification from the Court of Appeals, this case presents the question whether this Court should abolish the common law tort of alienation of affections in New Mexico. *See* Order of Certification to the New Mexico Supreme Court, *Butterworth v. Jackson*, A-1-CA-42095, at 4-5 (N.M. Ct. App. Oct. 22, 2024). We first recognized alienation of affections in 1923 in *Birchfield v. Birchfield*, 1923-NMSC-066, ¶ 6, 29 N.M. 19, 217 P. 616, and we have not relied upon the tort since 1925, *see Murray v. Murray*, 1925-NMSC-029, ¶ 1, 16, 30 N.M. 557, 240 P. 303.

{2}     On August 28, 2025, this Court heard oral argument in this matter, and we announced our decision from the bench to overrule our precedent in *Birchfield*, thereby abolishing the tort of alienation of affections. We further determined that the plaintiff in this case, James Butterworth (Ex-Husband), could not proceed with his claims under a theory of prima facie tort. Accordingly, we instructed the district court to dismiss Ex-Husband's claims against the defendant, Ethan Jackson (Boyfriend). We now write to explain our reasoning.

**I.     BACKGROUND**

{3}     Dr. Sarah Smith (Ex-Wife) and Ex-Husband were married residents of Colorado. Boyfriend resides in New Mexico. In 2021, in the midst of the married

couple's Colorado divorce proceedings, Ex-Husband filed a complaint against Boyfriend in New Mexico alleging alienation of affections and prima facie tort. Ex-Husband claimed that Boyfriend, after meeting Ex-Wife at a party in Colorado in 2019, maliciously initiated a relationship with her while she was still married, causing the alienation of her affections and the couple's divorce.

{4} Boyfriend filed motions to dismiss and for summary judgment, arguing that alienation of affections was no longer a legally valid cause of action in New Mexico. The district court denied both motions and certified for interlocutory appeal the question whether the tort is still legally valid. The Court of Appeals denied the application.

{5} Then, in 2024, citing "burdensome and invasive discovery requests," Ex-Wife concurrently filed a motion to intervene and a motion for judgment on the pleadings. She argued that all material events occurred in Colorado and, therefore, Colorado law controlled. Colorado law does not recognize and, in fact, criminalizes pursuit of this particular tort. C.R.S. §§ 13-20-201, 13-20-205. Ex-Wife characterized Ex-Husband's alienation of affections action as a way "to gain leverage while he appeal[ed] the Colorado" divorce ruling.

{6} The district court granted the motion to intervene, converted Ex-Wife's motion for judgment on the pleadings to one for summary judgment, and denied the

motion because discovery was incomplete. When the motion for summary judgment was denied, the district court granted further, extensive discovery, including "all communications between the Intervenor and the Defendant," to allow Ex-Husband to respond to Ex-Wife's choice of law argument. Ex-Wife then asked the district court to certify its ruling for interlocutory appeal, seeking review of whether Colorado or New Mexico law controls in multi-state alienation of affections cases. The district court certified the choice of law issue to the Court of Appeals. The Court of Appeals, opting to cut to the core of the case, reframed the issue and certified to this Court the question "whether the tort of alienation of affections should be abolished in New Mexico." *See* Order of Certification to the New Mexico Supreme Court, *Butterworth*, A-1-CA-42095, at 3.

{7}     We granted review of the certified question. However, because the parties failed to brief arguments on this Court overturning its own precedent, whether any decision to do so should apply retroactively or prospectively, and the impact of NMSA 1978, § 40-2-1 (1907) ("Mutual obligations" section under Chapter 40, Article 2: "Rights of Married Persons Generally") on the viability of the tort of alienation of affections, we requested supplemental briefing to fill those gaps.

## II.    DISCUSSION

### A.    Tort of Alienation of Affections in New Mexico

{8}    We begin our discussion with an understanding of the history and origin of alienation of affections. This Court first recognized the tort over a century ago. *Birchfield*, 1923-NMSC-066, ¶ 6. Arising from claims that a woman's father-in-law interfered with her marriage to his son, we explained the tort was intended to vindicate a plaintiff's "loss of the society, companionship, fellowship, comfort, conjugal affections and support of the husband [or wife], when caused by any third person maliciously invading the hallowed precincts of the home, and without justification severing the ties which bind." *Id.*

{9}    Two years later, in this Court's second and final precedential case concerning the tort, we affirmed a judgment in favor of a wife who brought an alienation of affections action against her husband's parents. *Murray*, 1925-NMSC-029, ¶¶ 1, 16. Importantly, in *Murray*, we clarified the interests at issue in alienation of affections claims. *See id.* ¶ 2. Rejecting the defendant's narrow definition of "consortium," we stated that "[c]onsortium means much more than the mere sexual relation, and consists also in that affection, companionship, conjugal love, fellowship, and assistance so necessary to a successful marriage relation." *Id.* Taken together, this Court has interpreted *Birchfield* and *Murray* as establishing an independent claim

for loss of consortium stemming from "the *intentional* alienation of . . . affections" by a third party. *Roseberry v. Starkovich*, 1963-NMSC-201, ¶¶ 3-4, 73 N.M. 211, 387 P.2d 321 (emphasis added), *overruled on other grounds by Romero v. Byers*, 1994-NMSC-031, ¶ 13, 117 N.M. 422, 872 P.2d 840.

{10}    Although this Court has not revisited the tort since *Murray*, we are keenly aware that "our court of appeals has declared that it 'look[s] with disfavor on claims for damages based on alienation of affections.'" *Lovelace Med. Ctr. v. Mendez*, 1991-NMSC-002, ¶ 29, 111 N.M. 336, 805 P.2d 603 (alteration in original) (quoting *Thompson v. Chapman*, 1979-NMCA-041, ¶ 10, 93 N.M. 356, 600 P.2d 302). The Court of Appeals first declared its disapproval of the tort nearly fifty years ago in *Thompson*, where it identified clear disjunction between the common law tort and the public policy demands of modern New Mexico. 1979-NMCA-041, ¶ 10. There, the Court went so far as to conclude that "public policy declares that it is in the best interest of the people to abolish the remedy" and that "[i]f [the Court] had the power" it would have done so. *Id.* The Court of Appeals did not believe that the tort could provide adequate monetary damages, that it further "'diminishes human dignity [and] inflicts pain and humiliation,'" and more fundamentally, that "'the interests which the action seeks to protect are not protected by its existence, and the harm it engenders far outweighs any reasons for its continuance.'" *Id.* (quoting *Wyman v.*

*Wallace*, 549 P.2d 71, 74 (Wash. Ct. App. 1976) (per curiam), *aff'd*, 615 P.2d 452 (Wash. 1980)).

{11} The Court of Appeals next expressed concerns regarding the tort's implications for litigants' right to privacy. *Hakkila v. Hakkila*, 1991-NMCA-029, ¶¶ 18, 22, 112 N.M. 172, 812 P.2d 1320. In an opinion rejecting an interspousal claim for intentional infliction of emotional distress, the Court emphasized that "[n]ot only should intramarital activity ordinarily not be the basis for tort liability, it should also be protected against disclosure in tort litigation." *Id.* ¶ 18 (alteration in original). Driving the Court of Appeals' disposition was the underlying "public policy of New Mexico to avoid inquiry into what went wrong in a marriage." *Id.* ¶ 21. The Court identified this policy as a through-line in contemporary New Mexico divorce law, noting that we were the first to recognize no-fault divorce, that our law apportions community property without inquiry into fault, and that punishment is not a consideration in alimony. *Id.*

{12} The final case displaying the Court of Appeals' disfavor for the tort cited both *Thompson* and *Hakkila* to reject claims of intentional infliction of emotional distress and prima facie tort which mirrored alienation of affections claims. *Padwa v. Hadley*, 1999-NMCA-067, ¶¶ 2, 18, 127 N.M. 416, 981 P.2d 1234. Affirming the dismissal of the plaintiff's complaint alleging the defendant "engaged in a pattern of

intrusive and often times sexual behavior with [the plaintiff's] wife, his former wife, and his former fiancée," the Court of Appeals held that the plaintiff failed to "state a claim for relief in tort under New Mexico law." *Id.* ¶ 2. The Court of Appeals noted its prevailing "concern that the harshness of litigation might unduly invade the privacy and intimacy inherent in the marital relationship and threaten fundamental personal liberties arising out of it." *Id.* ¶ 12. Concluding that the plaintiff made "no serious claim that he could sue . . . his ex-wife, his present wife, or his former fiancée, for their presumably equal role in these consensual affairs," the Court of Appeals rejected the idea that the plaintiff could sue a third-party defendant "for the same injuries." *Id.* ¶¶ 13-14. In New Mexico's treatment of torts implicating marital relationships, *Padwa* identified a "common concern, grounded in sound public policy, against undue interference in consensual sexual relations between adults." *Id.* ¶ 19. To the Court of Appeals, spousal affections are not property, and as such "[i]t is difficult to envision how the cuckolded spouse . . . could successfully state a claim in tort against the third party, whatever the label, without simultaneously trammeling the privacy rights and liberty interests of the other spouse." *Id.* ¶¶ 19-20. *Padwa* concluded that "recogniz[ing] such conduct as tortious" would "in effect, create a legal right in a husband . . . to the affections and loyalty of his partner." *Id.* ¶ 20.

{13} Applying de novo review, we now complete the arc originating in the Court of Appeals and overrule *Birchfield*. *See Boradiansky v. State Farm Mut. Auto. Ins. Co.*, 2007-NMSC-015, ¶ 5, 141 N.M. 387, 156 P.3d 25 ("Appellate courts review questions of law de novo." (internal quotation marks and citation omitted)).

**B.  Special Justification Exists for Overturning *Birchfield***

{14} This Court has long recognized the value in adhering to stare decisis, opining:

> Stare decisis is the judicial obligation to follow precedent, and it lies at the very core of the judicial process of interpreting and announcing law. It promotes very important principles in the maintenance of a sound judicial system: 1) stability of the law, 2) fairness in assuring that like cases are treated similarly, and 3) judicial economy.

*N.M. Right to Choose/NARAL v. Johnson*, 1999-NMSC-028, ¶ 11, 127 N.M. 654, 986 P.2d 450 (internal quotation marks and citation omitted). Thus, out of respect for principles of stare decisis, our decision to overrule this Court's precedent in *Birchfield* requires "special justification." *Trujillo v. City of Albuquerque*, 1998-NMSC-031, ¶ 34, 125 N.M. 721, 965 P.2d 305 (internal quotation marks and citation omitted). When determining whether such justification exists, we look to "whether one of the following convincingly demonstrates that a past decision is wrong":

> 1) whether the precedent is so unworkable as to be intolerable; 2) whether parties justifiably relied on the precedent so that reversing it would create an undue hardship; 3) whether the principles of law have developed to such an extent as to leave the old rule no more than a remnant of abandoned doctrine; and 4) whether the facts have changed

in the interval from the old rule to reconsideration so as to have robbed the old rule of justification.

*State v. Chavez*, 2021-NMSC-017, ¶ 52, 485 P.3d 1279 (internal quotation marks and citation omitted). We hold that these factors weigh in favor of overruling *Birchfield* and abolishing the tort of alienation of affections in New Mexico.

{15}     The tort's genesis dates back to the Roman Law concept of a damages remedy for the loss of services of a servant, incorporated into English law in the thirteenth century. *See Dupuis v. Hand*, 814 S.W.2d 340, 343 (Tenn. 1991). Then, in 1349, due to a labor shortage caused by the Black Death, England mandated compulsory labor and granted damages for loss of services if a servant was enticed away. *Id.* Because a wife was a type of servant to her husband, the damages remedy also applied to the loss of her services. *Id.* Thus, the tort originated in the English common law when wives were property of their husbands. Judge J. Matthew Martin, *An American Anachronism: The Heart Balm Torts*, The Honourable Society of the Middle Temple (Education 2021), https://middletemplar.org.uk/an-american-anachronism-the-heart-balm-torts/ [https://perma.cc/454W-JJWF]; *Coulson v. Steiner*, 390 P.3d 1139, 1142 (Alaska 2017) (same); *Helsel v. Noellsch*, 107 S.W.3d 231, 232 (Mo. 2003) (en banc) (same).

{16}     Those profoundly patriarchal origins do not reflect the law as it stands today. By 1900, most states had enacted some iteration of Married Women's Property Acts,

which afforded women legal independence from their husbands and the right to own property. *Hoye v. Hoye*, 824 S.W.2d 422, 424 (Ky. 1992). Women no longer being mere servants to their husbands eliminated the bedrock upon which the tort rested, forcing courts to either abolish the action or adopt a new rationale: the preservation of marriage, an interest shared equally by husbands and wives, opening the tort to both parties to a marriage alike. *Id.*; *see also Russo v. Sutton*, 422 S.E.2d 750, 753 (S.C. 1992). In New Mexico, the tort has always been available to both husbands and wives. *See, e.g., Birchfield*, 1923-NMSC-066, ¶ 6. That fact cannot, however, disentangle the tort from its anachronistic and deeply inequitable roots. *See Nonhuman Rts. Project, Inc. v. Breheny*, 197 N.E.3d 921, 945 (N.Y. 2022) (Wilson, J., dissenting) ("Under English common law, . . . the very being or legal existence of the woman is suspended during the marriage, or at least is incorporated and consolidated into that of the husband. During marriage, a wife simply had no legal existence. She became, in the words of the Seneca Falls Declaration of Sentiments, civilly dead." (brackets, internal quotation marks, and citations omitted)).

{17} Indeed, the inherently dehumanizing nature of the tort is reflected in the fact that, regardless of gender, it treats affections as property and presumes that a spouse has *no agency* regarding to whom they give their affections. *Cf. Nelson v. Jacobsen*, 669 P.2d 1207, 1222 (Utah 1983) (Stewart, J., concurring and dissenting) ("Persons

who have been married do not generally fall prey to overwhelmingly seductive powers of another like some inert piece of iron drawn inexorably into the ever-stronger field of power of a magnet. The affection of married persons for each other is usually alienated by their own conduct or misconduct."), *superseded by statute on other grounds as stated in Braun v. Medtronic Sofamor Danek, Inc.*, 719 F. App'x 782, 796 (10th Cir. 2017). Instead, the tort purports to take interlopers to task for effectively *stealing* the affections of the spouse just as one might steal an inanimate object.

{18} We agree with the Court of Appeals that "[a] spouse's love or a lover's companionship is not property that is subject to theft or trespass, and plaintiffs in such suits do not deserve to recover for the loss of or injury to property which they do not, and cannot, own." *Padwa*, 1999-NMCA-067, ¶ 19 (internal quotation marks and citation omitted). To conclude otherwise would "disregard[] the volitional act of the other spouse[, ex-spouse, or ex-lover] that is essential to the termination [of the marriage or love affair]." *Id.* (second and third alterations in original) (internal quotation marks and citation omitted).

{19} Similarly, the development of contemporary loss of consortium law in New Mexico further demonstrates that the tort's treatment of affections as property renders it a remnant of abandoned doctrine. Under *Birchfield* and *Murray*, New

Mexico limited recovery for loss of consortium to cases alleging "*intentional interference with consortium*" and denied recovery where harm arose from a third party's negligence. *Roseberry*, 1963-NMSC-201, ¶ 15 (emphasis added). We reasoned that "while [alienation of affections] is a direct injury to consortium, *a relationship entitled to protection under the law*, [negligent injury] is purely a coincidental result occurring without purpose or intent of the tortfeasor." *Id.* (emphasis added).

{20}    This Court abandoned that restrictive rationale three decades later when, relying upon the definition of consortium in *Black's Law Dictionary*, we determined that "[l]oss of consortium is simply the emotional distress suffered by one spouse who loses the normal company of [their] mate when the mate is physically injured due to . . . tortious conduct." *Romero*, 1994-NMSC-031, ¶ 8. Thus, this Court has made clear that loss of consortium is a *relational* interest, not a legal one—even where the relationship is that of a married couple. *Lozoya v. Sanchez*, 2003-NMSC-009, ¶ 20, 133 N.M. 579, 66 P.3d 948 (rejecting the idea that claims for loss of consortium are only viable where the tortfeasor damages a *marital* relationship, reasoning that "[a] person brings [a loss of consortium] claim to recover for damage to a *relational* interest, not a legal interest"), *abrogated by Heath v. La Mariana Apartments*, 2008-NMSC-017, ¶ 21, 143 N.M. 657, 180 P.3d 664. And absent a legal

interest in consortium, alienation of affections lacks any foundation upon which to build a claim.

{21}    In that vein, we reject Ex-Husband's suggestion that tortious interference with a contract might serve as the foundational legal wrong supporting alienation of affections actions. Establishing a claim of intentional interference with contractual relations requires a party to prove that a defendant had knowledge of a contract, that performance was refused, and that the defendant "played an active and substantial part in causing the plaintiff to lose the benefits of his or her contract." *Fogelson v. Wallace*, 2017-NMCA-089, ¶ 62, 406 P.3d 1012 (brackets, internal quotation marks, and citation omitted). Here, as discussed, there is no underlying legal interest in affections that might be subject to a contract. Nor could a spouse bring a breach of contract claim against their partner, the other contract party, for lack of affections—setting marital contracts apart from others. *See Hoye*, 824 S.W.2d at 426 ("Marital interference torts are distinguishable from actions for tortious interference with a contract against a third party because in contract suits the plaintiff can sue not only the third party but also the other party to the contract. In alienation of affections . . . , [a] spouse may not be subject to a suit by the marital partner. This logical asymmetry has prompted the majority of jurisdictions to eliminate these marital torts.").

{22}     And we decline to interpret Section 40-2-1 as creating one such contractual right to affections, let alone one subject to breach of contract or tortious interference claims. Such a right is susceptible to the same defects we identified with regards to a property right to affections under the tort. Furthermore, to date, this Court has exclusively interpreted Section 40-2-1 with respect to alimony and material "support." We will not vastly expand our reading of the statute to support a claim for alienation of affections. To the extent the Legislature created any statutory rights in Section 40-2-1, it also created a statutory remedy where the terms of Section 40-2-1 are violated: divorce under NMSA 1978, Section 40-4-1 (1973).

{23}     Instead, the legal recourse for lack of affection in a marriage is dissolution of the marriage and alimony. In 1973, New Mexico became the first state to adopt no-fault divorce on the ground of incompatibility. Section 40-4-1(A). The decision by the Legislature reflected "the public policy of New Mexico to avoid inquiry into what went wrong in a marriage." *Hakkila*, 1991-NMCA-029, ¶¶ 18, 21. And in stark contrast to that clear policy preference, alienation of affections cases *require* "inquiry into what went wrong." *Id.* ¶ 21. They demand disclosure of a couple's most intimate and painful choices in search of causation, all while treating one spouse as a passive, helpless bystander upon which the defendant acted and asking courts to reach that exact conclusion.

## III.  CONCLUSION

{24}  The core of alienation of affections claims and the proof they demand are irreconcilable with the legal developments that followed our holding in *Birchfield*. And beneath the legal progress of the last one hundred years is a sweeping undercurrent of social change that robs the tort of any lingering justification in the law. Therefore, we expressly abolish the tort of alienation of affections and overrule *Birchfield*.

{25}  **IT IS SO ORDERED.**

_____

**DAVID K. THOMSON, Chief Justice**

**WE CONCUR:**

_____

**MICHAEL E. VIGIL, Justice**

_____

**C. SHANNON BACON, Justice**

_____

**JULIE J. VARGAS, Justice**

_____

**BRIANA H. ZAMORA, Justice**